EVERARD BIERER, *et al.*, v. REED FRETZ.

. 33   329
. 60   409
| 60   471

1. WRITTEN CONTRACT, *Considered Completed; Delivery.* Where a written instrument, purporting to be a contract, is drawn up and signed by both parties, and left with a third person with the understanding that one of the parties should afterward get it and make and furnish to the other party a copy thereof, and there was no understanding or agreement between the parties that the instrument should not be considered as a contract, or that it should be considered merely as an escrow, but both parties seemed to consider it as a completed contract, *held*, that the instrument will be considered as a completed contract between the parties; and *further held*, that all that is necessary in the way of delivery to make a written instrument signed by both the parties operative and binding, is that there shall be a mutual understanding between the parties that the instrument shall be operative and binding between them.

2. WRITTEN CONTRACT, *Binding Though Parol Contract Broken.* Where parties enter into a written contract, and about the same time they with others make an independent parol contract whose stipulations do not interfere with or prevent the performance of the stipulations of the written contract, and the stipulations of the written contract may be performed whether the stipulations of the parol contract are ever performed, or not, *held*, that the written contract is binding upon both the parties, whether the stipulations of the parol contract are ever performed, or not, and even though it might have been the intention of one

of the parties at the time of making both of such contracts never to perform the stipulations of the parol contract.

3. TIME, *Not of the Essence of Contract; Breach; Damages.* Where a written contract is entered into between the parties for the exchange of real estate, the payment of money and the performance of some other things, and time is not made of the essence of the contract by the terms of the contract, *held,* that time is not of the essence of the contract, except, possibly, in a very slight and limited sense; and where the plaintiff, on the first day required by the contract, offers to perform all that is required of him to be performed, and the defendant refuses to perform on his part or to accept performance on the part of the plaintiff, and the plaintiff within five days thereafter does perform all that he could perform and tenders performance of the remainder, and the defendant still refuses to perform on his part, or to accept performance on the part of the plaintiff, the plaintiff may recover damages from the defendant for the failure on his part.

4. DEED AND TENDER, *When Both Good.* Where a deed actually executed by the plaintiff and his wife is tendered to the defendant, *held,* that both the deed and the tender may be good, although one letter may have been omitted from the wife's signature, and although possibly the official before whom the acknowledgment was taken was an attorney for the plaintiff.

5. ———— The question of performance, of tender of performance, and of waiver on the other side, discussed in the opinion.

6. ———— Where allegations in an answer are inconsistent with each other, the defendant is bound by those against him.

7. PETITION — *Defects Cured by Answer.* Where the allegations of an answer set forth matters definitely and explicitly which are defectively set forth in the petition, such allegations in the answer will cure the defective allegations of the petition.

8. BREACH OF CONTRACT; *Measure of Damages.* Where two parties enter into a contract for the exchange of land and the payment of money, and afterward one of them without sufficient reason refuses to perform on his part, and the property which he was to give is of greater value than the property which he was to receive, and the other party sues him for damages, *held,* that the measure of damages is the difference in value between the property which the plaintiff was to receive and that which he was to give in consideration therefor.

*Error from Brown District Court.*

ACTION brought by *Fretz* against *Bierer* and *Downer*, to recover damages for breach of a contract to convey to plaintiff certain real estate. Trial before the court and a jury;

October 5, 1883, judgment for plaintiff and against defendants for $500 and costs. Defendants bring the case to this court. The opinion states the material facts.

*C. W. Johnson*, for plaintiffs in error.

*Jas. Falloon*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Reed Fretz against Everard Bierer and Jacob Downer, for the alleged breach of the following contract, to wit:

"*Know all men by these presents*, That Reed Fretz, of the one part, and Everard Bierer and Jacob Downer, of the other part, of the county of Brown and state of Kansas, (Downer, of Fayette county, Pa.,) are held and firmly bound unto each other in the penal sum of one thousand dollars, to be paid unto the said parties, their heirs, executors, administrators, or assigns, to which payment, well and truly to be made, we bind ourselves, our heirs, executors, and administrators, and every one of them, firmly by these presents.

"*The condition of the above obligation is such*, That whereas the above-bounden Reed Fretz has this day sold to the said Everard Bierer and Jacob Downer, their heirs and assigns, for the sum of five thousand five hundred dollars, all the following described lot or parcel of land in the county of Brown and state of Kansas, to wit, lot No. 117, on Oregon street, in the city of Hiawatha, with the hotel known as 'Union Hotel,' and all the buildings thereon and privileges thereto attached; possession thereof to be given to said Bierer and Downer on January 1, 1883; all claims of mechanics, lumbermen and others, against said property, to be paid by said Fretz, and also taxes for years 1881 and 1882; and said Fretz is to have the railing put on side of first-story stairway, and put in wash basins, pipes, etc., in wash-room, as now ordered by him. In consideration whereof, said Bierer and Downer agree to convey to said Fretz the east half of the northwest quarter, and the west half of the northeast quarter, and the east half of the southwest quarter, and the southwest quarter of the southwest quarter; all valued at $3,000, and all in section No. 20, of township No. 1, of range No. 15, and to assume payment of a mortgage due to S. W. Colley, and to pay to said Fretz the balance of said sum of $5,500, after deducting said mortgage

and interest, on or before January 1, 1883, in case the other provisions of this contract are then complied with by said Fretz.   *Upon the payment* of the said sums being made, at the time and in the manner aforesaid, the said Reed Fretz and wife, and the said Bierer and wife, and Jacob Downer, single man, shall, on or before January 1, 1883, or as soon thereafter as possible, for themselves, their heirs, executors, and assigns, covenant and agree and with the said parties, that they, the said Reed Fretz and wife, to Bierer and Downer, and the said Bierer and Downer to Reed Fretz, their heirs, executors, administrators and assigns, shall execute good and sufficient warranty deeds for the above-described premises to and from each party.

"Now if the said Reed Fretz, on his part, and the said Bierer and Downer, on their parts, shall well and truly keep, observe and perform all said covenants and agreements herein contained, on their respective parts, then this obligation is to be void; otherwise, to remain in full force and virtue.

"Given under our hands, this 23d day of December, 1882.

REED FRETZ.        [Seal.]

E. BIERER.        [Seal.]

JACOB DOWNER.        [Seal.]

*By E. Bierer, his agent.*

Executed in presence of JAS. MATHERS, *Witness*."

A trial was had before the court and a jury, and judgment was rendered in favor of the plaintiff and against the defendants for $500 and costs, and the defendants, as plaintiffs in error, now bring the case to this court and ask for a reversal of such judgment.

The plaintiffs in error, in their brief, present a vast number of points and cite a vast number of authorities; and while we have carefully considered all the points made, with many of the authorities cited, yet we do not think that it is necessary to mention many of them in this opinion.   We shall mention only those points made which seem comparatively to be of the greatest importance.

The first point of importance made by counsel is, that the instrument sued on was never delivered; that it never became operative, and never had any binding force or obligation as a completed contract.   We think this point is untenable.   Bierer

drew up the instrument.   It was then signed by all the parties,
Bierer signing not only for himself, but also as the duly-author-
ized agent of Downer.   This was done near dark on Saturday
evening, December 23, 1882.   The parties then by agreement
left the instrument with Ira J. Lacock, with the understand-
ing that Bierer on the next Monday morning should get the
same, and should make and furnish to Fretz a copy thereof.
Bierer himself testified, among other things, as follows:

"Fretz and I went together to Lacock's office; told La-
cock here was a contract between Fretz and myself about
buying hotel property, and I would leave it with him until
Monday, and then I would get it and make Fretz a duplicate." .

There was no understanding or agreement between the
parties that the instrument should not be considered "a con-
tract," or that it should be considered merely as an escrow;
but, on the contrary, both parties from that time forward
treated it as "a contract;" and this the testimony of both
Fretz and Bierer shows.   We think the instrument was duly
delivered, and that it became "a contract" and operative on
that Saturday evening.   It is not necessary in law, to make a
contract operative and binding, that there should be an actual
manual delivery of the instrument by one of the parties to
the other; and this is true even where the instrument is signed
by only one of the parties as a deed of conveyance.   But
where the instrument is signed by both parties, as in this case,
it may become operative and be binding upon both parties as
a contract, although it may be retained by only one of them,
or be delivered to a third person.   All that is necessary in
the way of delivery to make a written instrument signed by
both parties operative and binding is, that there shall be a mu-
tual understanding between the parties that the instrument
shall be operative and binding between them.

The plaintiffs in error, defendants below, make the further
points, that this instrument is void for various uncertainties
and obscurities in its terms; that it does not contain the entire
contract between the parties; that other and additional mat-
ters were agreed to between the parties; and that its execution

was procured by the fraud of Fretz and others. Under the pleadings and the evidence, however, we do not think that any of these points are tenable. As a foundation, however, for a portion of them, it is claimed by the defendants below that it was understood and agreed between Fretz and Bierer, and Harvey B. Troxel, and Samuel Smouse, Bierer's father-in-law, that if the trade was made between Fretz and Bierer and Downer, that Troxel should then purchase the furniture in the hotel from Fretz, and that he and Smouse should lease the hotel for a year from Bierer and Downer, and keep it, and pay to Bierer and Downer $75 per month rent therefor. But Bierer and Downer now claim that this latter arrangement was a fraudulent scheme on the part of Fretz and Troxel for the purpose of procuring the trade to be made between Fretz and Bierer and Downer, and that Troxel in fact never intended to purchase the hotel furniture, or to lease the hotel, or to keep it. Bierer and Downer at first set up all these matters in their answer as a counterclaim, and prayed for a judgment for damages against Fretz for the amount of $1,000. But during the trial Bierer and Downer withdrew their counterclaim, and allowed these matters to remain only as a defense. We do not think that these matters will render the written contract between Fretz and Bierer and Downer void. They are no part of the written contract; they do not show such fraud in its inception as to render it void; and if they form a separate and independent contract, or if in any manner they may be considered as constituting the basis or foundation for a cause of action, Bierer and Downer may set them forth in some other action. They certainly have no place in this action, at least since Bierer and Downer withdrew their counterclaim.

The plaintiffs in error, defendants below, also claim that by virtue of the terms of said written instrument, time constituted an essential ingredient of the contract, and was of the essence thereof, and that the plaintiff Fretz did not perform his portion of the contract within the required time. Now in the first place, we do not think that time is of the essence of the contract, except possibly in a very slight and limited

sense. It was not necessary, under the terms of the contract, that all the things mentioned therein should be performed on or before January 1, 1883, or on or before any other specified time. Possession of the hotel, it is true, was to be given on that day; but other things were not to be performed on that day unless the parties were ready and willing to do so; and Fretz offered to give the possession of the hotel to Bierer and Downer on that day, and at the same time tendered to Bierer a deed therefor, conveying the property to Bierer and Downer, and offered also to perform all other things required to be performed by the contract; but Bierer, on the part of himself and Downer, utterly refused to perform on their part, or to accept performance on the part of Fretz, and he and Downer have always and at all times since neglected and refused to perform on their part. It would seem from the evidence that the money and property agreed to be paid by Bierer and Downer to Fretz for the hotel property was worth about $500 more than the hotel property was worth; that in fact Bierer and Downer made an unprofitable bargain; that by carrying out their contract they would have lost about $500; and this is probably the principal cause for their refusal to perform the stipulations of their contract, and the principal cause of all the trouble that has subsequently taken place between themselves and Fretz. It would seem from the evidence introduced, that Fretz was at all times desirous of fulfilling the contract on his part, but that Bierer, from December 25 or 26, 1882, forward, had no intention, with respect to himself and Downer, of complying with the contract on their part.

On or before January 5, 1883, Fretz had substantially complied with and performed everything that he was required to perform under the contract; and he again on that day tendered the deed for the hotel property to Bierer; and again Bierer refused to receive the deed, and refused performance on the part of himself and Downer; and such refusal was based upon the fact that Troxel had failed to purchase the hotel furniture of Fretz, and had failed to lease the hotel from

Bierer and Downer, and had nothing to do with certain other matters which we shall hereafter mention. These other matters are as follows: Bierer and Downer in this court claim that the deed executed by Fretz and wife and tendered to Bierer was signed "Maggie Fretz," when in fact it should have been signed "Margaret Fretz." Now there is nothing in the record that tends to show that Mrs. Fretz's name was "Margaret," but on the contrary the evidence clearly shows that her name was "Maggie;" and there can be no question but that she executed the deed. Fretz himself testified in effect that she did, though the question was not directly put to him. The deed recites on its face that it was executed by "Reed Fretz and Maggie Fretz his wife," and the officer who took the acknowledgment of the deed testifies that "Reed Fretz and Maggie Fretz his wife, who are personally known to me to be the same persons who executed" the deed, appeared "before me" and "duly acknowledged the execution" of such deed. Bierer and Downer also claim that the officer before whom the deed was acknowledged was at the time the attorney for Fretz. None of these objections, however, were made at the time the deed was tendered; and we think they now come too late, after the defendants, Bierer and Downer, have been sued for their failure to perform the contract on their part. We would think, however, that the deed is good. The omission of an $r$ in the name of Mrs. Fretz, where the name is signed to the deed, cannot invalidate the deed, when in fact she either made the signature herself or authorized the same to be made, and afterward in due form acknowledged the execution of the deed before the officer before whom the acknowledgment was taken. And even if the officer before whom the acknowledgment was taken was in fact the attorney of Fretz, or of Mrs. Fretz, or of both, and it is at least doubtful whether he was the attorney of either, (probably he was not,) this would not invalidate either the deed or the acknowledgment.

But it is claimed by the plaintiffs in error, defendants below, that some of the claims against the defendant were paid

merely by note. Now what if they were? It would seem from the evidence, that whenever Fretz paid the claims in that manner, he took receipts *in full payment* of the original debt; and besides, in many cases, if not in all, the creditors agreed that they would not file liens against the property. And we would further say, that we do not think that it appears that any claim remained unpaid after January 5, 1883, which was or could possibly have been made a lien or an incumbrance upon the hotel property, except the mortgage due to W. S. Colley, Bierer's brother-in-law, which Bierer and Downer agreed to pay. But even if there were any such claims, Bierer did not object to the performance of the contract on his and Downer's part because of any such claims. As before stated, he objected for the reason that Troxel did not lease the hotel for a year at $75 per month, as he claims that Troxel had agreed to do; and on January 5, 1883, he made the further objection that the deed was tendered and the claims paid too late. He, however, had not yet had the deed executed which he and Downer were to execute for the land which they were to convey to Fretz. He and Downer have at all times failed and refused to perform the stipulations of the contract on their part. It would seem that they have supposed that they could delay performance on their part, but that Fretz had no right to delay performance on his part.

The plaintiffs in error, defendants below, also claim that the pleadings were not sufficient to authorize any judgment to be rendered in favor of the plaintiff below. They further claim that where the allegations of their answer are inconsistent with each other they are not bound by the allegations against themselves, but may rely upon those in their favor; and they further claim that although the allegations of the answer may set forth matters definitely and explicitly which were defectively set forth in the petition, that such allegations in the answer cannot under any circumstances cure the defective allegations of the petition. We think the plaintiffs in error, defendants below, are in error with respect to all these

22 — 32 KAS.

matters. With respect to allegations in a defendant's answer, against himself, limiting, modifying or overturning other allegations inconsistent therewith, and in favor of himself, see *Wiley v. Keokuk,* 6 Kas. 94; *Butler v. Kaulback,* 8 id. 668; *Wright v. Bacheller,* 16 id. 259; and with respect to allegations in an answer curing defective allegations in the petition, see *Irwin v. Paulett,* 1 Kas. 418, 424; *Mitchell v. Milhoan,* 11 id. 617, 626, and cases there cited; *Campbell v. Coonradt,* 22 id. 705.

The plaintiffs in error, defendants below, also claim that the court below erred with respect to the rule of damages. The court below gave the following instruction to the jury:

"6. If you find in favor of the plaintiff, then the amount of his recovery should be the excess of value of the consideration which he was to receive over and above the market value of the hotel property, with the improvements that were to be made upon it under the terms of the contract; that is, you should ascertain the market value of the hotel property at the time of the contract of sale, in the condition that it was to be turned over to the defendants under the terms of the contract; then ascertain the market value of said tracts of land in section 20, as aforesaid, at the time of said contract, and add thereto the sum of $2,500, and from the aggregate of these two sums subtract said market value of said hotel property, and the amount should be your verdict, in case said market value of the hotel property is less than the said aggregate. But if the market value of said hotel property, as aforesaid, is equal to or in excess of said aggregate, then the recovery of the plaintiff should be for a nominal sum only."

We think the court below adopted the correct rule of damages. (1 Sedgwick on Damages, 7th ed., p. 370, marginal page 186, p. 382, marginal page 190, *et seq.,* also p. 428, being a note and a continuation of marginal page 199; 2 Sutherland on Damages, 211, *et seq.; Foley v. McKeegan,* 4 Iowa, 1; *Tracy v. Gunn,* 29 Kas. 508.)

As the jury found in favor of the plaintiff and against the defendants, and rendered merely a general verdict, and made no special findings, we have generally assumed the facts to be in accordance with the plaintiff's evidence.

Perceiving no substantial error in this case, the judgment of the court below will be affirmed.

All the Justices concurring.