THE SCANDINAVIAN COAL AND MINING COMPANY V. CHARLES WHITTAKER.

DAMAGES — *Release — Fraud — Sufficiency of Evidence*. In an action for personal damages occasioned by falling down a coal shaft, the defendant plead a settlement, payment, and release of all damages, and in the answer set forth a copy of the receipt. The plaintiff replied that it had been procured by fraud and misrepresentation, but his reply was not verified, and he admitted the execution of the receipt.

On the trial the plaintiff rested without having introduced any evidence tending to impeach the receipt, and the defendant demurred to the evidence. The trial court overruled the demurrer, the defendant standing on it. The court instructed the jury "that so far as this defense is concerned under the evidence, I say to you that it is not before you for your consideration." *Held,* That the issues made by the pleadings were not only misunderstood, but the jury were expressly directed wrong. Without offering some evidence to break the *prima facie* force of the receipt, the plaintiff below totally failed on one material point.

### *Error from Osage District Court.*

ACTION to recover damages for personal injuries. Judgment for plaintiff *Whittaker* for $5,000. The defendant *Company* brings the case here. The opinion states the material facts.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*Ellis Lewis,* and *Thomson & Heizer,* for defendant in error.

Opinion by SIMPSON, C.: Defendant in error brought his action against plaintiff in error to recover damages for injuries sustained while in the employ of the defendant. He stated substantially in his petition, that on or about April 8, 1885, he was employed by defendant at its coal mines at Osage City; and at nine o'clock of said day he ascended the shaft connected with the mines of the defendant, by means of bunting or braces, in a careful manner, to the top of said shaft, and that it then became necessary to grasp a portion of the slide against which a gate worked at the top of said shaft, in getting up the side of said shaft which plaintiff was ascending; but that said slide was negligently and carelessly fastened and secured, as not to support and enable plaintiff to use the same in drawing himself from said shaft; that plaintiff did not know it was unsafe, and that when he took hold of said portion of said slide for the purpose of assisting himself out of the said shaft, it broke away and plaintiff fell down the shaft, a distance of some forty feet, and was severely bruised, and

his limbs broken, etc. He claimed damages in the sum of ten thousand dollars.

The answer of the defendant contained: First, a general denial; second, that the injuries sustained by plaintiff were occasioned wholly by plaintiff's negligence and want of care in attempting to leave defendant's coal shaft in an unusual and improper manner, and at a place not designed for the passage of workmen to and from said mine; third, that on the 15th day of May, 1885, the defendant settled with plaintiff for all damages due him on account of injuries received, which injuries were those complained of in this suit, and plaintiff on said day made, executed and delivered to defendant his written release and satisfaction and receipt in full for all damages on account of said injuries received on April 7, 1885, which receipt is in words and figures following, to wit:

"OSAGE CITY, KANSAS, May 15, 1885.—Received of the Scandinavian Coal and Mining Company, twenty-one and no 100ths dollars, in full for all work and all damage I may have against said company by reason of falling down a shaft of theirs on or about April 7, 1885.        His
                        CHARLES  ✕  WHITTIKAR.
Witness: A. B. COOPER."        mark.

In reply, plaintiff made a general denial to the second and third defenses; and further, as to the third defense, that the plaintiff could not read either written or printed matter, and never was able to do so; that at the time plaintiff affixed his mark to the written instrument set out in the answer of the Scandinavian Coal and Mining Company, said company was indebted to plaintiff in the sum of twenty-one dollars for work and labor performed by plaintiff for defendant; and defendant had paid plaintiff for the same; and at the time of said payment the plaintiff had been required to sign a receipt or voucher similar to the one set forth in the defendant's answer; and at the time plaintiff executed the receipt or voucher set out in defendant's answer, A. B. Cooper, whose name appears to said voucher — the said A. B. Cooper being a stockholder and officer of said defendant company, and who was then

authorized to pay the employés of defendant for work and labor — stated and represented to plaintiff that the said voucher and receipt was a receipt to defendant for the money owing to him by defendant for work and labor up to that time performed by plaintiff for defendant; and that said receipt and voucher was the same kind of a receipt and voucher which the plaintiff had before that time executed to said company for the indebtedness of said company to plaintiff for such work and labor, and such as the employés of said company executed to said company for their wages for work and labor performed; and said A. B. Cooper stated and represented to plaintiff at the time of witnessing plaintiff's mark to said receipt and voucher, that it was only a receipt to the defendant for the money due him for work and labor performed for defendant, the same as other receipts and vouchers before that time given by plaintiff to the defendant company on plaintiff's receiving his compensation from said company for labor performed; and plaintiff, not being able to read said voucher and receipt, and relying on said statements and representations of said A. B. Cooper that said receipt was a mere receipt and voucher for money owing to plaintiff by defendant for said work and labor performed, as aforesaid, by plaintiff for defendant, plaintiff affixed his mark thereto in the presence of said A. B. Cooper; whereupon said plaintiff says that said receipt was obtained from plaintiff by defendant without consideration, and by means of false and fraudulent statements and misrepresentations, so far as the same is a receipt for the payment by defendant of any damages sustained by plaintiff by reason of the injuries received by plaintiff, as described in plaintiff's petition.

On the 19th day of November, 1886, the case came on for trial in the district court of Osage county. Upon the trial, the following facts substantially appeared: The plaintiff had been engaged about coal mines for about five years, and had for quite a period been engaged in working in and about the shaft attached to the mines of defendant, known as shaft No. 2 of the Scandinavian Coal and Mining Company. This

shaft was from 35 to 40 feet deep; it was about twice as wide
from north to south as from east to west, and was divided in
the middle between the east and west sides, by bunting or braces
to keep it from squeezing together.    These braces were a little
distance apart, so that they could be used as a ladder for the
men to climb up and down the shaft when the cages were not
running.    They extended up to the mouth of the shaft, and
from the mouth to the distance of about four or five feet up-
ward it was boarded up above the bracing.    Toward the east
side of the shaft hand-holes were cut in the boarding to the
top thereof, to enable the men after they had passed the bunt-
ing to insert their hands and climb up the bunting until they
reached the top or mouth of the shaft with their feet, when
they could step out on the east side into a place known as the
workmen's entrance, which was inclosed by a fence and a gate,
and was a place where the men usually went into and down
the shaft, and came up out of the shaft, when the cages were
not in use.    Toward the west side the bunting or bracing ex-
tended to the top of the pit at the coal landing, and it was
then boarded up to a distance of about four or five feet, but
there were no hand-holes there, and on this west side there
was a sliding gate which moved up and down between boards
nailed as braces to keep it in its position.    When the cage
came up the shaft with a load of coal, it would catch this gate
and move it up, and the car of coal would be run off the west
side on the coal landing, and there dumped, and then run
back onto the cage, and as the cage went down into the shaft
the gate would slide down between the braces or slides, and
again rest on the platform.    These braces were only put in and
designed for the purpose of keeping the gate in its position.
When the gate was in its position the men could not get out
of the west side unless they climbed over the gate; that side
was not designed by the company for the men to get out of, and
no appliances were made by the defendant to enable the men
to get out on that side.    But sometimes when the gate would
be out some of the men would nevertheless go out on that
side.    On the day of the injury, the plaintiff, being down in

the mine, was ordered by his boss to go up and unlock the cages; two other men started up the shaft at about the same time; they all climbed up on the bunting, and the two men got out on the right side — the east side of the shaft where the hand-holes were cut. The plaintiff climbed up on the west side of the shaft, and after he had passed the bunting he grasped hold of the piece of board on the west side of the shaft, and used as the brace or slide to hold the gate in its position, (the gate being out at that time,) and hung his weight upon it. This board gave way, pulling out the nails, and the plaintiff seeing himself falling, wound his arm around the rope running down to the bottom of the shaft to the cage, and slid down so rapidly as to injure his arm, and striking upon the iron cage with his feet, injuring them. The board did not come clear off. This board, as before stated, was not intended for the men to take hold of to lift themselves out of the shaft; and according to the plaintiff's own testimony, the company did not want the men to go out upon the west side — the side that plaintiff came up out of the shaft. One of the witnesses testified that the nails in the board appeared to be a little rusty. Plaintiff also testified that he could have climbed up on the bunting and stepped out at the gate, and that he could have stepped upon the coal landing or workmen's entrance without taking hold of anything except the cross-pieces. The miners generally went up and down the east side, and that was the proper place for them to go out. The board was put in there simply for the purpose of holding the gate in place, and was not intended for anybody to take hold of to get out of the mine. Whittaker's work took him frequently in the shaft, and he went in and out of it frequently, and always had gone out on the east side. No evidence was given to impeach the receipt or release set up in defendant's answer; no evidence given of false and fraudulent representations, nor of want of consideration for the receipt or release. The defendant demurred to plaintiff's evidence, which demurrer was overruled by the court; and thereupon the defendant introduced no evidence whatever, and stood upon its

demurrer to the evidence, and the case was submitted to the jury under instructions of the court. The jury returned a verdict for the plaintiff and against the defendant for $5,000. Motion for a new trial overruled, and judgment rendered for plaintiff. The defendant brings the case to this court.

The errors insisted on here are, that the trial court should have sustained the demurrer to the evidence of the plaintiff below, and errors with respect to the instructions and admission of evidence. It is said for the plaintiff in error, that the release or receipt set out in the answer of the defendant below must be taken as true, as its execution was not denied under oath; and that hence it was incumbent on the plaintiff below to introduce some evidence impeaching it, or that his evidence was subject to the demurrer. It is contended, on the other side, that the execution of the receipt is not one of the necessary or material facts to be alleged in pleading a settlement of plaintiff's cause of action; that the new matter set up in the answer is a settlement; that the receipt is but evidence of that defense, and does not come within the meaning of §108 of the code; that the allegation as to the execution of the receipt could be left out without affecting the materiality of the pleading.

We are inclined to hold that the provisions of §108 of the code are broad enough to cover the receipt as a written instrument within its contemplation, and that its execution is admitted by the pleading. This provision has been held to include a sheriff's bond, a bill of lading, a school order, a promissory note, and real and chattel mortgages; and hence a release and receipt for damages must be held to be within the meaning of that section. The reply of the plaintiff alleged that it was procured by fraud and misrepresentation, and its execution being admitted by the pleading, the plaintiff below was necessarily compelled to offer some evidence tending to impeach it, before he could recover. At the trial the court instructed the jury, "that so far as this defense is concerned under the evidence, I say to you that it is not before you for your consideration." The issues made by the pleadings were

not only misunderstood, but the jury were expressly directed wrong.   Unless there was some evidence tending to break the *prima facie* force of the receipt, the evidence of the plaintiff below totally failed on one material point, and was subject to the demurrer.   For this error, as well as for the misdirection to the jury, the case will have to be reversed, and sent back for a new trial.   As there was some evidence tending to establish negligence on the part of the coal company, we prefer that there shall be a new trial, rather than that the case be remanded with instructions to sustain the demurrer.

The fifth instruction is subject to the criticism made thereon in the brief of the plaintiff in error.   There is surely not such a state of facts presented as would authorize an inference, much less establish it as a fact, that the coal company was guilty of such gross negligence as implies willful or wanton injury.

It is recommended that the judgment of the district court be reversed, and the cause remanded with instructions to sustain the motion for a new trial.

By the Court: It is so ordered.

All the Justices concurring.