**CONWILL v. ELDRIDGE et al.**

No. 5890—Opinion Filed Dec. 10, 1918.

(177 Pac. 79.)

(Syllabus.)

1. **Statutes—Adoption from Another State —Construction by Courts of Other State —Presumption.**

Where a statute taken from another state has at the time of its adoption been construed by the highest court of the state from which it was taken, it is presumed that the legislative body which adopts such statute adopted it as construed by such highest court.

2. **Pleading—Answer—Inconsistent Defenses —Admission.**

Although, under the statute, a defendant may set forth in his answer as many grounds of defense as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both, yet, where he makes repugnant or inconsistent defenses, a denial of a fact alleged in the complaint in one portion of the answer is modified by an admission, expressly or impliedly made, of such fact in another portion of the answer, and such admission will be taken to be true.

3. **Witnesses — Incompetency — Transactions with Decedent—Waiver.**

The incompetency of a witness to testify concerning transactions or communications had with a person since deceased is waived by the objecting party eliciting on cross-examination testimony relating to such transactions or communications, or by showing on cross-examination that such transactions or communications occurred.

4. **Trial—Directed Verdict—Evidence.**

Where, under the pleadings, the plaintiff is entitled to recover unless certain affirmative defenses pleaded by the defendant are sustained, and where no evidence is produced reasonably tending to support such defenses, a verdict should be directed in favor of the plaintiff.

5. **Appeal and Error—Verdict—Insufficiency of Evidence.**

Where it is apparent from the record that the evidence does not reasonably sustain the verdict of the jury, this court will set such verdict aside and grant a new trial.

Hardy, J., dissenting.

Error from District Court, Texas County; R. H. Loofbourrow, Judge.

Suit by J. D. Conwill against Marion Eldridge and Benjamin F. Eldridge, administrators of the estate of W. H. Eldridge, deceased. Verdict for defendants, motion for new trial overruled, and plaintiff brings error. Reversed, and cause remanded, with instructions to grant a new trial.

John L. Gleason, M. M. Gibbens, and Cottingham & Hayes, for plaintiff n error.

Everest, Vaught & Brewer and S. A. Horton, for defendants in error.

TISINGER, J. J. D. Conwill brought suit in the district court of Texas county on August 17, 1909, against Wm. H. Eldridge, seeking to recover the sum of $1,117.74, the amount of the principal and interest of two promissory notes alleged to have been made and executed to him by the defendant. This suit was defended by Marion Eldridge as guardian for the defendant Wm. H. Eldridge, and resulted in a verdict and judgment in favor of the defendant. An appeal was taken to this court. Pending the appeal, the defendant Wm. H. Eldridge died. On motion of the plaintiff, the cause was revived in this court against Marion Eldridge and Benjamin F. Eldridge, as administrators of the estate of Wm. H. Eldridge, deceased, and thereafter on March 11, 1913, this court rendered judgment reversing the judgment of the district court of Texas county and remanding the cause for a new trial. Conwill v. Eldridge, 35 Okla. 537, 130 Pac. 912.

Plaintiff then amended his original petition by alleging the death of the defendant Wm. H. Eldridge and the appointment and qualification of the defendants Marion Eldridge and Benjamin F. Eldridge as administrators of his estate. These defendants filed their amended answer, and the defenses alleged therein necessary to a determination of the issues involved on this appeal were as follows:

1. A general denial of the allegations contained in plaintiff's petition.

2. A denial that the notes sued on were executed by the deceased, Wm. H. Eldridge.

3. The allegation that, if said notes were executed by Wm. H. Eldridge, they were without consideration and void.

4. The allegation that, if the notes were executed by Wm. H. Eldridge, they have been paid in full.

5. That the consideration of the promissory notes sued on, if any were executed, was the purchase price of one jack, and that plaintiff secured the execution of the notes by false and fraudulent representations that the jack for which they were executed was sound and in every way and manner suitable for breeding purposes, when in truth and in fact he was entirely and wholly

worthless for breeding purposes and without value, all of which facts were known to the plaintiff at the time of his making said false and fraudulent representations and were unknown to Wm. H. Eldridge; that said representations were made for the purpose of deceiving and defrauding said Wm. H. Eldridge, and he did rely upon the same. and was thereby deceived and defrauded; that plaintiff was enabled to accomplish his fraud by reason of the senility and weakness fo the said Wm. H. Eldridge, who at the time the notes sued on in this case were executed was mentally incompetent and incapable of entering into a valid contract; that the jack has died since the execution of the promissory notes, without fault of the said Wm. H. Eldridge or defendants, and for that reason they are unable to offer to return him to plaintiff.

6. By alleging that the Percheron horse described in the notes sued on did not form any part of the consideration for which said notes were given, but that said horse was paid for by the defendant Wm. H. Eldridge in full prior to the time of the execution of said notes.

The second trial of the case resulted in a general verdict for the defendants. Plaintiff filed his motion for new trial, which was overruled by the court, and he brings the case here by petition in error and case-made.

When the defendants presented their amended answer, the court permitted it to be filed, but struck therefrom the second ground of defense, which denied the execution of the notes sued on. And, when plaintiff undertook to make out his case, the court relieved him of the burden of proving the execution of the notes. Clearly, the action of the court in so doing was authorized by defendants' answer, for it, in effect, admitted their execution. It will be observed that, in the separate defense to the effect that the notes were without consideration and void, that they had been paid, and that they were obtained by fraud, are all based on one hypothesis, "if they were executed." It will also be observed that, in the separate defense, that the notes were obtained by fraud, the defendants alleged that plaintiff secured the execution and delivery of the notes by certain false and fraudulent representations therein set out, and they further alleged that the jack, "which was the consideration of the notes," had died "since their execution." The defendants further plead, in the eleventh separate paragraph of their answer, without any qualification, that the Percheron horse described in the notes did not form "any part of the consideration for which

the notes were given," but that said horse was paid for by the defendant Wm. H. Eldridge, in full, "prior to the time of the execution of said notes."

These admissions of the execution of the notes were sufficient to justify the court in relieving plaintiff of the burden of proving it. Rightly interpreted, the allegations of the answer constituted in several instances an admission of the execution of the notes, and an attempt to avoid its effect by averments of fraud in their procurement, of want of consideration, and of payment. The answer of the defendants, taken as a whole, seems to be in the nature of a plea of confession and avoidance. To all practical intents and purposes, it admits that plaintiff had a cause of action, but avers that it had been discharged by some subsequent or collateral matter affirmatively alleged therein.

Section 4745, Revised Laws. 1910, which permits a defendant to set forth, in his answer, as many grounds of defense as he may have, whether they be such as have been theretofore denominated legal, or equitable, or both, was a part of the Code of Civil Procedure of the State of Kansas which was adopted as the Code of Civil Procedure of the Territory of Oklahoma by the Legislative Assembly of the Territory in 1893. Statutes 1893, § 3972. It took effect and became of force after its publication in the Statute Book, which, according to the certificate of the Secretary of the Territory, was on August 14, 1893. This Code of Civil Procedure was made a part of the laws of the state of Kansas when the territorial acts were revised in 1868. Prior to its adoption as the Code of Civil Procedure of the Territory of Oklahoma, it had been construed by the Supreme Court of the State of Kansas, and it is therefore presumed that the territorial Legislature adopted the construction which had been placed on it by the highest court of that state. National Live Stock Com. Co v. Taliaferro, 20 Okla. 177, 93 Pac. 983; Western Terra Cotta Co. v. City of Shawnee, 39 Okla. 716, 136 Pac. 595; St. L. & S. F. R. Co. v. Bruner, 52 Okla. 349, 152 Pac. 1103; Amsden v. Johnson, 74 Okla. ___. 158 Pac. 1148.

The earliest reported case we have been able to find is that of Wiley v. Keokuk, 6 Kan. 94, rendered in 1870. The third paragraph of the syllabus reads:

"Whatever is admitted in a special defense operates, so far, as a modification of a 'general denial,' and is to be taken as true without other proof."

The rule here announced was followed in

the case of Butler v. Kaulback (1871) 8 Kan. 671, in which the court said:

"It is pretty well settled that facts admitted by the pleadings cannot be disputed by the evidence, but must be taken as true for the purpose of the action; and in the nature of things a party cannot in fact have inconsistent defenses. It is impossible that a thing may be true and untrue at the same time. For this reason parties are not allowed to set up inconsistent defenses, for such defenses carry falsehood upon their face. Therefore, whenever a defendant admits anything in his answer, it is right to presume that the admission is intended to modify and control anything else that may be found in the answer in apparent conflict therewith."

It was also followed in the case of Yandle v. Crane (1874) 13 Kan. 344. In the case of Barnum v. Kennedy (1878) 21 Kan. 181, the third paragraph of the syllabus reads:

"The petition alleged the making of certain assignments. The answer, besides a general denial, contained an averment that the said alleged assignments were made without consideration, and not in good faith. Held, that the fact of the assignment was thereby admitted."

See also, Bierer v. Fretz (1884) 32 Kan. 329, 4 Pac. 284; Wright v. Bacheller (1876) 16 Kan. 259.

In the case of Losch v. Pickett (1887) 36 Kan. 216, 12 Pac. 822, the first and second paragraph of the syllabus reads as follows:

"1. A party should be bound by the allegations of his pleadings deliberately made, and should not be allowed to obtain benefits from contradictory and inconsistent allegations therein, even if made in separate counts."

"2. The spirit of our Civil Code is that a party shall state in his pleadings the real facts of his case, and not falsehoods or fictions. A thing cannot be true and untrue at the same time; and any pleading containing allegations made by the same party both affirming and denying a particular thing carries falsehood upon its face, and in such a case the court may consider as true such of the allegations as are against the pleader."

The rule of procedure announced in these earlier cases has been adhered to by the Kansas courts up to the present time. Osborne v. Shilling, 74 Kan. 675, 88 Pac. 258, 11 Ann. Cas. 319; Mitchell v. Ripley, 5 Kan. App. 818, 49 Pac. 153; Fetzer v. Williams, 80 Kan. 554, 103 Pac. 77; Felix v. Railway Co., 60 Kan. 467, 57 Pac. 128.

The case of De Lissa v. Coal Co., 59 Kan. 319, 52 Pac. 886, quoted with approval by this court in the case of Covington v. Fisher,

22 Okla. 207, 97 Pac. 615, was an action upon a promissory note which showed on its face that it was not the defendant's obligation, and the defendant was only charged with liability thereon because of certain special circumstances connected therewith. It appears that the plaintiff, De Lissa, alleged in his petition that one Fuller and others were partners and by agreement among themselves bought from the plaintiff a tract of land in Missouri. The purchase was made in the name of Fuller, for the benefit of the partnership, and was made in contemplation of the organization of a corporation to be composed of the partnership members, to which, when organized, the land was to be conveyed, and used for coal mining purposes. Within a short time thereafter, the members of the partnership did organize themselves into the defendant corporation. and the tract of land was conveyed to it by Fuller, in pursuance of the agreement. The note sued upon had been given by Fuller to the plaintiff as part of the purchase price of the land, and with the agreement among the partners as promoters of the corporate enterprise that it should be the obligation of the corporation when organized. The defendant answered the petition: First, by a general denial; and, second, that the plaintiff had procured the execution of the note by the one who signed it by fraud, etc.

The court held that the two defenses were not inconsistent, that the defendant could not be required to elect upon which defense it would stand, and that the burden of proof did not rest upon him, as in case of a plea of confession and avoidance.

The Kansas Supreme Court, in the case of Fetzer v. Williams, supra, 80 Kan. 554, 103 Pac. 77, in commenting on the De Lissa v. Coal Co. Case says:

"The defendant, upon the strength of an expression from section 722 of the third edition of Pomeroy's Code Remedies, quoted but not acted upon in De Lissa v. Coal Co., 59 Kan. 319 [52 Pac. 886], suggests that an objection to defenses in an answer upon the ground of their inconsistency can never be sustained. There is an apparent conflict in the authorities on this question. 1 Enc. Pl. & Pr. 855, 856; 31 Cyc. 148. Many of the cases cited, however, in reality merely decide that the particular defenses under consideration were not in fact inconsistent. The seeming difference of opinion is also in part accounted for by the fact that some of the courts apply the term 'inconsistent' to defenses, which are not so in fact. The decisions are elaborately reviewed in Seattle National Bank v. Carter, 13 Wash. 281 [43 Pac. 331], and in a note thereto in 48 L. R. A.

177. This court has long been committed to the proposition that a general denial is regarded as modified by admissions made in stating a special defense, which is only an application of the broader principle that every pleading must be consistent with itself. Wiley v. Keokuk, 6 Kan. 94; Butler v. Kaulback, 8 Kan. 668."

The opinion of the court in the case of Felix v. Railway Co., supra, was written by Mr. Chief Justice Doster, who also wrote the opinion of the court in the De Lissa v. Coal Co. Case, supra, and in the former case he makes reference to the latter and distinguishes the two. And, as the pleadings in the Felix v. Railway Co. Case are analogous to the pleadings in the instant case, and as the legal effect of such pleadings is therein fully stated, we give the same at length:

"This was an action by Oscar Felix, the plaintiff in error, against the receivers of the St. Louis & San Francisco Railway Company, for damages on account of the loss of services of his minor son, Effer Felix, caused by injuries negligently inflicted upon the minor by running upon and over him a train of cars. Previous to the commencement of the action, Oscar Felix, as guardian and next friend of his son Effer, made with the receivers an agreement of settlement and compromise in behalf of the minor for the injuries received by him, and also for himself in respect of his right of action for loss of his son's services, and for the medical care and attention he had been compelled to bestow upon him. By the terms of this agreement suit was to be instituted in behalf of the minor by the father and next friend, and when instituted was to be compromised with the approval of the court. The suit was brought, a sum of damages agreed upon, approved by the court, paid, and receipted for. The material portion of the agreement of compromise is as follows: 'And in consideration of the foregoing agreement and the settlement of said suit when brought, said Oscar Felix agrees to waive and release all claims he may have against said receivers for loss of the services of said Effer Felix, and for extra medical care, assistance and attention rendered or to be rendered said Effer Felix on account of said injury.'

"Among other defenses to this action, the receivers pleaded the making and carrying out of the agreement of settlement and the execution of the release. To this the plaintiff filed the following verified reply: 'Second. Plaintiff never executed the pretended release or discharge set forth in the answer of the defendants for the purposes therein stated on its face. Plaintiff never knew that the alleged release or discharge had been executed until after this action had been commenced, and until after the defendants had filed their answer in this action. Plaintiff did not even know that such release had been executed as claimed until he was informed by his attorney. If this plaintiff ever signed said release, he signed it in ignorance of its contents or legal effect, and believing that it was simply a statement that he was the father of Effer Felix, and was willing to commence an action as the next friend of Effer Felix; but this plaintiff did not know that said instrument was a release of the defendants from damages for the loss of the services of his son Effer Felix. Said release or discharge was never read or explained to this plaintiff. Plaintiff is illiterate and uneducated, and is unacquainted with legal terms and methods of doing legal or general business. The defendants well knew this, and at the time when the alleged release purports to be signed the defendants fraudulently persuaded and induced this plaintiff not to employ a lawyer, in order that the plaintiff might not be advised of his rights. The defendants represented that if he employed a lawyer they would not pay his son anything and that the lawyer would cheat his son out of all that he might recover by the lawsuit. At the time when said release purports to be executed, and at the time of the rendition of the judgment in the action of Effer Felix, a minor, by Oscar Felix, his next friend, against A. Walker, John J. McCook, and J. C. Wilson as receivers of the St. Louis & San Francisco Railway Company, plaintiff did not know that a father was entitled to damages for the loss of the services of his minor son, when such loss was caused by an injury carelessly and negligently inflicted by another, without fault on the part of the father or son; nor did he know, until after the rendition of said judgment, that he had a cause of action against these defendants for the loss of services of his son, Effer Felix, by reason of the negligent acts of the defendants as complained of in the petition. At the time when said alleged release purports to be executed plaintiff was suffering from brain fever and great pain and grief from the injury to his son, and was not in a mental condition to know what he was doing. The plaintiff's mental condition, as described, was aggravated by the serious injury which his head had received a few years before from being hit with rocks and clubs. Plaintiff never executed the pretended release set forth in the answer."

"At the conclusion of the testimony in behalf of plaintiff, a demurrer to it was filed and sustained. From the order sustaining the demurrer error is prosecuted to this court. It cannot be maintained. Upon the trial no evidence whatever was introduced by the plaintiff to support the allegations of the reply above quoted, or to avoid the effect of the release which the defendants had pleaded in their answer. Rightly interpreted, the allegations of the reply constituted in several instances an admission of the execution of the release, and an attempt to avoid its effect by averments of fraud or mistake.

The reply was in reality a plea of confession and avoidance. The defendants' case was sufficiently made out for them by the admitted allegations of their answer; hence it was incumbent upon the plaintiff to supplement his case in chief with evidence in avoidance of the answer. Coal Co. v. Whittaker, 40 Kan. 123, 19 Pac. 330. By observing the italicized portions of the above-quoted reply, it will be seen that the plaintiff at the most pleaded only hypothetically and in the subjunctive mode. Nowhere, except in the last sentence, is there anything approaching to a direct denial of the execution of the release, but the reply, taken as a whole, admits its execution and seeks to avoid its effect. Where there are inconsistent allegations in a pleading, the party making them is bound by those most unfavorable to himself. Bierer v. Fretz, 32 Kan. 330, 4 Pac. 284.

"The reply is identical in effect with the answer in Dinsmore v. Stimbert, 12 Neb. 433, 11 N. W. 872. There the court said:

"'The answer of the defendant in the court below is altogether indefinite and uncertain. He first alleges that he never signed the note, and that the signature thereto is not genuine. He then alleges that if he did sign the note, or the signature thereto is genuine, then that it was procured through the "fraud and circumvention of either Laird or Dezendorf or both of them, in some way or manner unknown to the defendant, in the transaction and negotiation by the defendant had with the said Laird or Dezendorf in and about the appointment of the defendant as agent to sell a certain patent fence post, without any fault or negligence on the part of the defendant." * * *

"'The answer in Douglas v. Matting, 29 Iowa, 498 [4 Am. Rep. 238], cited by plaintiff in error, is substantially the same as this and that was held by the Supreme Court of that state to substantially admit the execution of the note. And such must be true of the pleading under consideration. The defendant in the court below must be held to know his own signature. If the signature to the note was not his, then it was simply a case of forgery, and all of his pleadings and testimony in regard to the representations of Laird and Dezendorf, his own inability to readily read English, etc., became immaterial. We think the court below erred in submitting the question, "Did the defendant sign the note sued on?" for a special finding and thereby placing prominently before the jury a question which, as we have seen, must be regarded as admitted by the answer."

"The reply borrowed no strength from the verification attached to it. There was, as we have seen, no denial of the execution of the release, but, on the contrary, an admission of its execution; hence there was nothing in the reply to which the verification could be related.

"There is nothing in the views herein expressed in conflict with De Lissa v. Coal Co., 59 Kan. 319, 52 Pac. 886. The decision of that case was controlled by the general rules of pleading and in no wise by any particular statute, and, accordingly, it was held that a general denial of the execution of a written instrument as and for the writing of the defendant, it not purporting on its face to be the defendant's obligation, and the plaintiff only charging the defendant with liability upon it because of certain special circumstances, coupled with an averment of fraud in procuring the execution of the instrument by the person who signed it, were not inconsistent as defenses and did not amount to a plea of confession and avoidance. In that case the writing in question did not purport to be that of the defendant; therefore the denial of its execution by the defendant did not require verification upon oath. In this case the execution of a written release of the cause of action by the plaintiff is alleged in the answer. The execution of that release, though in form denied in the reply under oath, is in fact admitted in the reply. The case, therefore, is governed by section 108 of the Civil Code (Gen. Stat. 1897, c. 95, § 108; Gen. Stat. 1889, par. 4191), which ordains that unless the execution of written instruments be denied under oath they shall be taken as true. The execution of the release being taken as true, or rather being in fact admitted as true, with all the inferences and intendments resulting therefrom, its effect could not be neutralized except by proof in the first instance of the special matter set up in avoidance of it.

"In the case of De Lissa v. Coal Co., supra, the allegations of the answer were epitomized as follows: 'The note was not executed in my behalf, and I therefore deny liability, but, if the person executing it undertook to bind me by its terms, I assert he was fraudulently induced to do so.' The reply in this case may be summarized as follows: 'I admit I executed the release set forth in the answer, but I assert I was fraudulently induced to sign it.' Having thus admitted the execution of the instrument, the plaintiff was compelled by force of section 108 of the Code to show reasons why he should not be bound by it, while in the former case the defendant was not bound in the first instance to give evidence in avoidance of it because he was not charged with having executed it. In the one case the plaintiff was bound to show that what did not purport to be the obligation of the defendant was such in reality, while in the other case the plaintiff was bound to show that what did purport to be his obligation was not in reality binding upon him."

The foregoing authorities announce, in effect, the following rule: Although, under the Code, a defendant may set forth in his answer as many grounds of defense as he

may have, whether they be such as have been heretofore denominated legal or equitable, or both, yet, where he makes repugnant or inconsistent defenses, he will be deemed to admit that defense most unfavorable to himself, and the plaintiff may use the admission as evidence to establish that particular allegation in his complaint.

In a note appended to the extensive and elaborate review of the case of Susznik v. Alger Logging Co., 76 Ore. 189, 147 Pac. 922, found in Ann. Cas. 1917C, 700 the foregoing rule is stated as the "minority rule," and some of the decisions of the Supreme Court of Kansas herein referred to are cited in support of it. It seems also to be the rule adopted by the highest courts of the states of Louisiana, Minnesota, Missouri, and Wisconsin. But, under the well-recognized rule hereinbefore stated, that where a statute is taken from another state and has, at the time it is taken, been construed by the highest court of that state, it is presumed that the legislative body which adopted the statute also adopted the construction which had been placed on it by such highest court, we are persuaded to follow the minority rule and adhere to the interpretation and construction of the statute give by the Supreme Court of Kansas from which state our Code of Civil Procedure was taken. And we are the more inclined to follow such minority rule when it is supported by authority and what we consider the better reasoning.

In Thompson on Trials (2d Ed.) § 197, reads as follows:

"The pleadings are drawn by the attorneys of the parties, except in those few cases where parties are foolish enough to endeavor to act as their own attorneys; and no better illustration of the principle under discussion could be furnished than is found in the binding nature of the admissions in the pleadings. Such admissions are evidentiary in their character, are an absolute estoppel upon the party making them, unless he seasonably withdraws them by amendment, and obviates the necessity of the other party proving the facts thus admitted. Much could be written upon this subject. There are implied admissions as well as express admissions. It has been held that, where an answer sets up several distinct defenses, a denial in one is qualified by an admission in another—which is merely an application of the rule that a party's pleading, like any other written instrument, is to be construed as a whole, and, in case of any incongruities or contradictions, is to be taken most strongly against the pleader. If therefore a party in one count of an answer denies a fact alleged in the petition or complaint, and in another count admits it, the admission, and not the denial, will be taken to be true. It will

estop him, and the plaintiff will not be bound to prove the fact thus admitted. For instance, where the action was replevin for unlawfully taking the plaintiff's goods, and the answer contained two defenses: (1) a general denial of the allegations of the complaint, and (2) a justification of the taking under a levy upon execution—it was held that the answer admitted the taking for the purposes of the trial, and that to that extent the second defense vacated the first. In another case, the same court, applying our same principle held that a general denial in one count of the answer was inconsistent with special matter alleged in another count, and was to be construed as modified by the latter. This principle has been applied by the Supreme Court of the United States in a case originating in the Circuit Court of the United States for the District of Minnesota; the court holding that the admission of the plaintiff's title contained in an equitable defense set up in the third count of the answer overrode and controlled a denial of the plaintiff's title in the first count, and was conclusive upon the question of title."

Bliss on Code Pleading, § 341, reads in part: "There can be no denial of a statement absolutely admitted upon the record." The rule which we have stated is given a broader and more extensive application in the general rule announced in 8 Corpus Juris, p. 924, § 1210:

"* * * Where defendant answers denying the execution of the instrument but alleging matter in avoidance of its legal effect, or extrinsic matters of defense his answer will be treated as admitting the making of the instrument as charged in plaintiff's pleading."

The rule which we have announced as the "minority rule" seems also to be supported by this court in the case of Schuber v. McDuffee, 67 Okla. 160, 169 Pac. 642. The fourth paragraph of the syllabus reads:

"Although the answer of defendants contained a general denial, this was qualified by other allegations therein contained, which admitted all the essential facts necessary to authorize a judgment in plaintiff's favor, and it was not error to sustain a motion for judgment on the pleadings."

The practice under our Code of Civil Procedure does not recognize fictions (section 4767, Revised Laws 1910), or that a verified pleading, as was the defendants' answer in the instant case, can contain anything other than a truthful statement of the facts relied on by the pleader, set forth "in ordinary and concise language, and without repetition." Section 1745, Revised Laws 1910.

We can see no good reason why the allegations of a verified pleading, even if

not conclusive against the pleader, should not be treated as admissions against the person or persons making them, and that as between the denial of a fact alleged in the complaint and the admission of the same fact in some other part of the answer, in a separate or special defense, the admission should not be taken as true so as to render it unnecessary for the plaintiff to establish that particular fact by testimony.

Having admitted the execution of the notes, the burden of invalidating or avoiding them was cast on the defendants; and whether they successfully carried this burden so as to authorize the general verdict of the jury in their favor, or failed to successfully carry it, is the determining question in the case.

A careful examination of the record shows that the only defense relied on by the defendants at the trial of the case was that the notes sued on were without any consideration to support them. All other defenses were either eliminated by the court or abandoned by the defendant. It is true that the defendants pleaded payment and the court submitted to the jury the question as to whether or not the notes had been paid; but we have been unable to find in the record any evidence authorizing the submission of this issue to the jury. A careful review of all the testimony shows that the only question as to payment was the possibility of payment made by the deceased defendant, Wm. H. Eldridge, before the notes were executed. The evidence that the consideration of the notes was a certain Percheron stallion sold by the plaintiff to the deceased defendant was uncontroverted, and defendants attempted to show that the stallion had been paid for before the notes were executed, as alleged by them in the eleventh paragraph of their answer. If they had succeeded in establishing such payment, the notes would, of course, have been without any consideration to support them and, in the hands of the original holder, would have been void.

There was no evidence whatever to sustain the allegation made by the defendants in their answer that the jack was the consideration for which the notes were executed. While this seems to have been one of the contentions of the defendants, as it appears hypothetically stated in their answer, yet they offered no proof to sustain it, nor to overcome the positive evidence introduced in behalf of the plaintiff that the notes were given for the Percheron stallion. It is apparent that they did not rely upon the defense of a failure of consideration because of the sexual incapacity and general worthlessness of the jack, for no evidence tending to sustain such a defense appears anywhere in the record. Neither did the court submit that issue to the jury. The only reason why the jack figures in the case, as made by the evidence, at all is because of plaintiff's testimony that a certain executory agreement made by him with the deceased defendant, Wm. H. Eldridge, was never carried out, and that, before the notes sued on were executed, the agreement was abrogated and a new and different one made, at the request of the deceased, whereby the notes sued on were given for the Percheron stallion named in the agreement, and the property which, by the terms of the agreement, was to have been given by the deceased to the plaintiff in exchange for the stallion was given in exchange for a jack instead.

The executory agreement referred to was as follows:

"Dated September 25, 1907.

"I agree to sell W. H. Eldridge one Percheron stallion, six years old, weight about 1,600 pounds, and I agree to accept in payment of said stallion one stallion 11 years old, weight about 900 pounds, eight spring mule colts and two pony mares and a note for one hundred dollars, due in one year, the stock to be delivered November 1st.

"J. D. Conwill."

The record shows that the agreement was partially carried out. That is, the Percheron stallion was delivered to Eldridge, and all of the stock, with the exception of the eight young mules, were delivered to Conwill. When Conwill went to Eldridge's place to get the young mules, and before they were delivered, Eldridge requested that he be released from the agreement and that he be permitted to give his promissory notes for the Percheron stallion, which was granted by Conwill, and the notes sued on were then executed. Eldridge also offered to give in exchange for a jack owned by Conwill the live stock he had agreed to give him for the stallion. This offer was accepted and the trades were closed, Conwill taking away with him the eight young mules.

Counsel for defendants contend that the evidence showing the facts as herein outlined was the testimony of the plaintiff, and that as he was an incompetent witness to testify in his own behalf in respect to any transaction or communication had personally by him with the deceased under the inhibition of section 5049, Revised Laws 1910, section 4509, Statutes 1903, and as objection was made to his competency on this ground, his testimony should not be considered by this court on appeal. While the

testimony of the plaintiff was not the only evidence showing the abrogation of the executory agreement and the making of the other trades, and while such other evidence was in no way controverted, yet the plaintiff was properly permitted to testify in regard thereto, for the reason that the defendants waived the protection of the statute and opened the door to redirect examination touching the whole matter by eliciting on cross-examination of the plaintiff testimony relating to these very transactions. It would be a harsh rule that would permit the personal representatives of a decedent to bring out on cross-examination only such testimony relating to transactions or communications had by the witness with the decedent as would accomplish their purpose, by establishing such facts as they desired to prove, and seal the lips of the witness as to other matters connected with such transactions or communications. The statute under consideration was taken from the state of Kansas and was construed by the Supreme Court of that state prior to the time it was made a part of the laws of the territory of Oklahoma in the case of Niccolls v. Esterly, 16 Kan. 32, as follows:

"Now the testimony of the plaintiff in his own behalf was in reference to the same transactions of which he had testified at the instance of defendant. And while, if the defendant had so chosen none of this testimony could have been admitted, yet, having interrogated the plaintiff concerning these matters, and having obtained some of the facts concerning them. he could not thereafter object to the plaintiff's giving all the facts. By introducing part, he opens the door to all. Just as a party may not introduce his own statements in his own behalf. yet if his adversary draws out a part of a conversation he may introduce the balance. The principle is general that where a particular witness, or a certain kind of testimony may be excluded, if the party who has the right to insist upon the exclusion waives that right, and himself calls the witness or introduces the testimony, he cannot, after he has obtained what he desires, insist upon the exclusion, so far at least as to prevent a full development of the matters which he has partially presented."

This construction has been adhered to, so far as we have been able to ascertain, ever since the decision in the Niccolls v. Esterly Case was rendered. Plowman v. Nicholson, 81 Kan. 210, 105 Pac. 692, 106 Pac. 279.

In the case of Poole v. Poole, 96 Kan. 84, 150 Pac. 592, Ann. Cas. 1918B, 929, the fifth paragraph of the syllabus reads:

"The incompetency of a witness to testify concerning communications or transactions had with a person since deceased is waived by the objecting party showing on cross-examination the fact that such a communication or transaction occurred."

Some of the other authorities supporting this rule are: In re Wharton, 132 Iowa, 714, 109 N. W. 492; Lange v. Klatt, 135 Mich. 262, 97 N. W. 708; Craig v. Norwood, 61 Ind. App. 104, 108 N. E. 395; Comstock's Adm'r v. Jacobs, 89 Vt. 133, 94 Atl. 497, Ann. Cas. 1918A, 465; Moe v. Paulson, 128 Minn. 277, 150 N. W. 914; Arnold v. Cocanaugher, 170 Ky. 712, 186 S. W. 488; 40 Cyc. pp. 2342-2344.

And in the case of Cox v. Gettys, 53 Okla. 58, 156 Pac. 892, this court held that, where a party to an action takes the deposition of his adversary with reference to certain transactions had with a deceased person, the incompetency of such adversary party to testify touching the whole matter is waived, whether the deposition was ever completed and filed in court or not.

In the instant case, the plaintiff testified to facts which, according to the terms of the promissory notes sued on, accelerated the maturity of the one on which suit was brought before it was due. This testimony was not in respect to any transaction or communication had personally by him with the deceased defendant. The defendants then cross-examined him concerning his transactions with deceased, had him identify the executory contract of sale as the one signed by him and given to the deceased, and introduced the same in evidence. By doing so they waived the protection the statute gave them and opened the door for a redirect examination touching the whole matter.

We have carefully searched the record in this case and have been unable to find any evidence reasonably tending to support the general verdict rendered by the trial jury in favor of the defendants. Admitting the truth of all the evidence which was given in their favor, together with such inferences and conclusions as might be reasonably drawn from it, there was not sufficient evidence to authorize the verdict.

At the conclusion of all the testimony, the plaintiff requested the court to peremptorily instruct the jury to return a verdict in his favor for the full amount sued for, which request the court refused.

As, under the pleadings, the plaintiff was entitled to recover unless the affirmative defenses of the defendants were sustained, and as no evidence was produced reasonably tending to support such defenses, the court committed error in not peremptorily instructing the jury to return a verdict in favor of the plaintiff in accordance with his re-

quest.   Stock Exchange Bank v. Williamson, 6 Okla. 348, 50 Pac. 93 ; Harrah v. First National Bank, 26 Okla. 620, 110 Pac. 725 ; Spitts v. Southwestern Ootton Oil Co., 28 Okla. 706, 115 Pac. 776 ; Offutt v. Wagoner, 30 Okla. 458, 120 Pac. 1018 ; Fitzpatrick v. Nations, 30 Okla. 462, 120 Pac. 1020.

The judgment of the trial court is reversed, and this cause remanded, with instructions to grant a new trial and proceed in accordance with this opinion.

All the Justices concur, except HARDY, J., who dissents.