WINCHESTER v. GUYER et al.

No. 33235.   Dec. 13, 1949.

Rehearing Denied Feb. 21, 1950.

Second Petition for Rehearing Denied April 18, 1950.

*216 P. 2d 589.*

J. R. Huggins and King & Wadlington, all of Ada, for plaintiff in error.

W. F. Schulte, of Ada, for defendants in error.

ARNOLD, V. C. J. Action by Jessie Lee Guyer et al. above named, against Bertha Winchester for possession of certain real estate and to quiet title thereto. Verdict and judgment for plaintiffs, and defendant appeals.

Summary of the facts and issues involved in the action may be had by stating the substance of the pleadings by the respective parties as follows:

This action was commenced May 7, 1946, by plaintiffs filing their petition in the district court of Pontotoc county alleging that they are the owners of the property involved, to wit: the north 40 feet of lot 24, block 99, of the city of Ada, Oklahoma; that they are entitled to possession thereof and that they acquired title by inheritance from their father, W. H. Guyer, who died in November, 1945; that the estate of W. H. Guyer has been administered upon and the property involved herein distributed to the plaintiffs as his sole heirs; that defendant has placed of record in the office of county clerk of Pontotoc county a notice claiming this property which is a cloud on the title of plaintiffs; plaintiffs prayed judgment for possession of said property, quieting their title thereto and canceling the instrument above referred to.

By her answer and her amendment thereto defendant denied that the plaintiffs are the owners of the property and denied that the plaintiffs are entitled to possession; that the defendant is the owner of said real estate and that she is rightfully in possession thereof; that she acquired title and right to possession by reason of an executed oral agreement with W. H. Guyer in his lifetime by the terms of which it was agreed that the defendant should have the property in consideration of her performing certain services as nurse and housekeeper for W. H. Guyer during the remainder of his life, said agreement having been entered into on or about November 30, 1944; that by performing such services up to the date of the death of W. H. Guyer the oral contract was fully executed by the defendant and is without the statute of frauds.

By their reply plaintiffs denied generally the new matter alleged in defendant's answer, pleaded the statute of frauds as against the alleged contract and that defendant had an adequate remedy at law for any services rendered by her.

Trial was had to the court and a jury February 17 and 18, 1947, and resulted in a nine-man verdict in favor of plaintiffs upon which verdict judgment was rendered and entered by the court.

The parties will be referred to as plaintiffs and defendant as they appeared in the trial court.

In her petition in error defendant has alleged twelve grounds of error. These twelve specifications of error are comprehended by five legal propositions stated in her brief and relied upon for reversal of the judgment. Her first proposition reads:

"The court erred in refusing and ruling out competent evidence offered by the plaintiff in error (defendant below), and erred in overruling said defendant's motion for new trial."

This proposition is so comprehensive that it challenges the attention of this court to practically the entire record. Other propositions urged by defendant in her brief are merely incidental and subsidiary to this main proposition.

On the trial of the case the evidence in chief for plaintiffs consisted of certain record evidence and the oral testimony of W. F. Schulte, attorney for

plaintiffs. The record evidence was deeds showing W. H. Guyer's title to lot 24, block 99, in the city of Ada, and certain records of the county court of Pontotoc county reflecting its proceedings in the administration of the estate of W. H. Guyer. Mr. Schulte testified that soon after the funeral some of the children of the deceased wanted him to act as administrator of their father's estate and that he was subsequently appointed and acted as such until the final order of the court making distribution of the estate and discharging him as such administrator. He then testified that before his appointment as administrator he visited the defendant who was then occupying the premises in question and had conversations with her at various times. He then related portions of these conversations with the defendant, which plaintiffs, insist were admissions by her against interest. By questions and answers his version of these portions of the conversation is as follows:

"Q. What did she tell you was the character of her possession? A. I asked her if she was renting the property and she said she was and I asked her how much she was paying and she said twenty dollars a month and then I asked her as to whether the rent was paid up and she said that it was paid until December the first. . . . Q. Did she at that time make any other claim to that property other than as a tenant? A. She did not. . . . Q. Did she (referring to Mrs. Winchester, the defendant) ever at any time during those conversations that you had with her, did she ever at any time inform you that she was claiming some right to that property other than as a tenant? A. In either the latter part of January or the first part of February, 1946, the nearest statement she ever made to that effect was this: She said she had had a trade with Mr. Guyer—Q. A little bit louder. A. She said she had a trade with Mr. Guyer, she was to take care of him for a year and if she did take care of him for a year then she was to get a deed but that Mr. Guyer had died before she had taken care of him for a year. Q. That

was the only claim she made? A. Yes, sir".

He further testified that after consulting with his clients, the Guyer children, he advised the defendant that they desired to do something for her and had authorized him to tell her that she might continue to occupy the premises rent free until the property was sold and he introduced in evidence a memorandum to this effect. He further testified that he thereafter served a notice upon the defendant to terminate her tenancy as of May 1, 1946.

We have thus stated the general substance of plaintiffs' case` in chief as developed by the witness, Schulte. Demurrer of defendant to plaintiffs' evidence was overruled and exceptions reserved.

Preliminary to her own testimony in defense there was testimony by various long time acquaintances and friends of Mr. Guyer tending to show the confidential and business relations which had subsisted between the deceased and the defendant for a number of years. John Kaiser, who had known the deceased for 25 years, testified that when deceased was clearing off the rear end of lot 24, block 99, deceased told the witness that he was going to build a little house there for Bert; that when the house was built he told witness "You see, I have built that now for Bert;" that Bert was the name by which deceased spoke of Mrs. Winchester. M. M. Carter had known the deceased for 40 years and had worked with him at various times; that while deceased was still living in the Ada Rooms witness heard that he was sick and went to see him; in the conversation there, deceased told witness that he was going to cut off 40 feet of the 12th street lot and build on it; that deceased said he had told Mrs. Winchester if she and Charlie, her husband, would move in and she took care of him he would deed the property to her. J. H. Austin had known deceased for about 40 years and had fre-

quently associated with him and had conversations with him; that after the return of deceased from a trip which he made several years before his death, he told witness that Bertha looked after his property in his absence and that everything came up straight. H. C. Harris, who had known deceased for a number of years, went to see the deceased in the house which he was building on the rear of lot 24 when the inside work on the building was nearly finished; that during his visit the conversation with deceased the latter told witness that he had gotten Mrs. Winchester to sell her house and to move in here; that deceased stated "as long as she lives she can have a home"; that deceased said he was tired of rooming houses and wanted a place where he could rest and have someone to take care of him. C. C. Lane had known the deceased since statehood; they were good friends; that he worked on the house which deceased built on the lot in question; that sometime after deceased and defendant had moved into the house witness went by there about 5:00 o'clock one evening to see the deceased, but he was not at home; that after supper he made another visit and found deceased there, and that in reply to a remark made by witness as to where deceased had been, deceased told him he had been to see Roscoe Arnold to get some papers drawn; that after the funeral, witness was at the house when Jessie Lee Guyer and Lindley Guyer were there; that the defendant delivered to them the pocketbook of deceased which contained $95 and the keys of deceased, one of which opened a steel box kept by deceased in which were his private papers; that Jessie Lee Guyer opened the box and witness saw her take a paper therefrom which looked like a deed; that after looking it over she handed it to Lindley who also glanced over it and that Jessie Lee Guyer then placed the same in her pocketbook. Roscoe C. Arnold testified that he had lived in Ada 35 years and had practiced law; that he knew W. H. Guyer

in his lifetime; that he had never performed any services for the deceased except one time in 1945; that deceased asked him to prepare a warranty deed for him, which he did; that he kept a carbon copy of the instrument which he prepared; that deceased came to the home of witness to get the instrument which he had prepared; that the instrument was not executed by the deceased in the presence of a witness; the carbon copy of the instrument so prepared was identified by the witness and over objection of plaintiffs was admitted in evidence; it was a warranty deed dated June 7, 1945, from W. H. Guyer to Mrs. Bertha Winchester covering the property involved in this action and reciting a consideration of "$10.00 and past housekeeping services."

Mrs. Bertha Winchester, as a witness in her own behalf, testified in substance that she had known the deceased since 1924; that while he was living at the Roland Rooms she looked after him, took care of his room, and when he moved to the Ada Rooms in 1937, she still continued to look after him, take care of his room, and perform other services; that deceased was nearly 84 years of age when he died and that he had been in poor health and sickly for a number of years; that she wrote letters for him, collected rents for him, and did anything that his needs and circumstances required to be done. The record then discloses the following:

"Q. Now, when he built this place down here on Twelfth Street, when was that? A. That was in November—well, he started in October, 1944. Q. When did he finish it? A. Well, I moved in there on the twenty-ninth of November, 1944, and then he moved in on the first day of December, 1944. Q. Why did you move in there? A. Because he told me he would give it to me when he died. By Mr. Schulte: Just a minute, I would like to ask a question. By the Court: All right. By Mr. Schulte: Q. Are you undertaking now to testify about any agreement with Mr. Guy-

er? A. Yes. By Mr. Wadlington: Now, we object to that—By Mr. Schulte: Let me make my record. Comes now the plaintiff and objects to the question or to any testimony of this witness as to any contract or conversation that she may have had with Mr. Guyer for the reason she is an incompetent witness to testify about it under the statute. By Mr. Wadlington: We have some argument to make on that. By the Court: Well, we have a positive statute on that, don't we? By Mr Wadlington: Yes, but we have some decisions here.

"Reporter's Note: Thereupon the jury is excused until nine o'clock A.M. on February 18, 1947, and argument of counsel is heard on the objection and thereupon the Court takes a recess until Tuesday, February 18, 1947, at nine o'clock A. M.

"And now, on this the 18th. day of February, 1947, court is again in session, the jury is present and the parties are present and represented by counsel and the following further proceedings were had, to wit:

"By the Court: The objection will be sustained. By Mr. Wadlington: Give us an exception to the court's ruling. By Mr. Wimbish: We now move to strike the answer of the witness about what he said he would do."

This motion to strike was sustained over the objection and exception of defendant. Thereafter, objections were sustained to every question intended to elicit testimony from the witness in contradiction of the testimony of Mr. Schulte as to the various conversations which he had with the witness with the exception that she was permitted, over plaintiffs' objection, to say: "I told him Mr. Guyer gave me that place and that it was mine and that I had no agreement to pay rent." This is the substance of the record of her testimony in so far as it relates to the first clause of defendant's first proposition, to wit:

"The court erred in refusing and ruling out competent evidence offered by the defendant."

Mr. Guyer died November 4, 1945, at the age of 84. All of his children lived in California, but three of them came to Ada "immediately after his death" and employed Mr. Schulte as attorney for the heirs and designated him as their choice for administrator of the estate. His petition for letters of administration was filed in county court November 9, 1945, and his appointment was made thereafter on November 19, 1945. In his testimony Mr. Schulte does not fix the time of his first conversation with Mrs. Winchester, but it is evident that he moved quickly in making a case for his clients against her by securing admissions against interest. His version of this first conversation with her has been heretofore quoted as is also his later conversation in the latter part of January or the first part of February, 1946. His testimony as to these conversations with the defendant is the only oral testimony in the case in behalf of plaintiffs. When the defendant, Bertha Winchester, took the stand as a witness in her own behalf and questions were propounded to her intended to develop her version of these conversations with Mr. Schulte, he interposed an objection to her competency as a witness to testify in regard to these same conversations and this objection was sustained by the trial court under the provisions of 12 O. S. 1941 §384. Her lips were thus sealed against the giving of testimony upon the only controverted issue in the case. We are of the opinion that the trial court erred in sustaining the objection to her competency as a witness for the reason that by Mr. Schulte's testimony in reference to these same matters, plaintiffs had waived any objection to her competency as a witness and the jury was entitled to hear her version of the matters testified to by Mr. Schulte. In the case of Conwill v. Eldridge et al., 71 Okla. 223, 177 P. 79, this court had under consideration a similar situation in reverse order. There the objection was made by the defendant to the competency of the plaintiff to testify in reference to cer-

tain matters which had been fully testified to by witnesses for the defendant. In commenting upon the ruling of the trial court in that case on the objection interposed, this court said:

"It would be a harsh rule that would permit the personal representatives of a decedent to bring out on cross-examination only such testimony relating to transactions or communications had by the witness with the decedent as would accomplish their purpose, by establishing such facts as they desired to prove, and seal the lips of the witness as to other matters connected with such transactions or communications."

Other witnesses had testified to conversations had at various times with the deceased, all tending to show that he recognized the existence of an obligation on his part to the defendant because of personal services rendered by her for him when he was ill and needed attention and a desire on his part to provide a home for her after his death. The testimony of defendant, if she had been permitted to testify, may or may not have shown the carrying out by the deceased of these expressed intentions. At any rate the jury was entitled to hear her version of these conversations with Mr. Schulte which were relied upon by plaintiffs to establish admissions by defendant contrary to the reasonable inferences that might be drawn from the testimony of these other witnesses, who were old-time friends and associates of the deceased. That there was a division of opinion in the juryroom as to the merits of this controversy is shown by the fact that the verdict was a nineman verdict.

Upon the record as here presented, we are of the opinion that the trial court erred to the prejudice of the defendant in sustaining the objection to her competency as a witness and the judgment is accordingly reversed.

GIBSON, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur. DAVISON, C.J., and WELCH, CORN, and HALLEY, JJ., dissent.

WELCH, J. (dissenting). I agree with the rule of law of the first paragraph of the syllabus, that parties may waive the benefits of the statutes cited, but I disagree with the application of that rule to the facts here shown. I think the majority opinion results in an improper extension of this rule of waiver and that the majority conclusion on that point is not justified by the cited case Conwill v. Eldridge. See Harper v. Corcoran, 166 Mich. 474, 132 N.W. 106.

HALLEY, J., concurs in this view.