E. B. BUTLER v. WM. J. KAULBACK.

1. PLEADINGS; *Answer; Contradictory Averments.* The principle decided in the case of *Wiley v. Keokuk*, 6 Kas., 94, that " Whatever is admitted in a special defense operates so far as a modification of a general denial, and is to be taken as true, without other proofs," reaffirmed.

2. CONTRACT FOR THE SALE OF LANDS; *Principal and Agent; Specific Performance.* Whenever an agent having authority to sell land for his

principal makes a contract in writing for the sale of the same, in his own name, without mentioning therein the name of his principal, and puts the purchaser in possession thereof, who makes thereon lasting and valuable improvements, and the purchaser is afterward sued by the principal for the recovery of the land, the purchaser may, with proper allegations in his answer, show by parol or other evidence that it was the understanding of the parties at the time of making the contract that the agent was merely contracting for his principal, and that it was the intention of the parties that the principal should be bound by the contract; and if the same be shown, the principal will be held to specifically perform the contract.

*Error from Brown District Court.*

EJECTMENT. brought by *Kaulback* as plaintiff under § 595 of the code. *Butler* answered to the petition, setting up two defenses: First, a general denial. Second, that the plaintiff *Kaulback* was the original owner of the property in controversy; that defendant made application to him by letter to purchase it; that *Kaulback* answered by letter as follows:

"TOWNSEND, AUGUST 30, 1868.

"E. B. BUTLER, *Sir:* Your letter of Aug. 12th is received. In answer will say that what arrangements you can make with Mr. Giles Chipman, of Undunda, will be satisfactory to me. Yours, &c., W. J. KAULBACK."

That said Giles Chipman was *Kaulback's* duly authorized agent for the sale of said land; that when *Butler* received *Kaulback's* letter he applied to Chipman to purchase the property; that Chipman sold it to him according to the terms of the following instrument, to-wit:

"Know all men that I have sold this day Oct 3d 1868 to E. B. Butler northeast quarter sec. 27, town 2, range 18, known as Kaulback's place, for one thousand dollars—fifty dollars down, four hundred and fifty dollars the first of December 1868, and five hundred dollars with interest on the first of December 1869. GILES CHIPMAN."

That for said sum of fifty dollars *Butler* gave his promissory note payable in sixty days which he paid when due; · that Chipman agreed that *Butler* should have a deed of conveyance when all the payments should be made; that the said Chipman at the time put *Butler* in possession of the property;

that he has been in quiet and peaceable possession ever since; that he has paid the taxes thereon, and made thereon, with the knowledge of *Kaulback*, lasting and valuable improvements, worth $1,500; that the defendant was at the time the two subsequent payments became due, and has been ever since and now is ready and willing to pay the same; but that *Kaulback* has been all the time absent from the state; that Chipman died before the first payment became due; that about December 1st, 1869, plaintiff informed the defendant that one Theodore Chipman was his agent for receiving said payments: that defendant then tendered to said Theodore $1,116, the full amount then due to the plaintiff; that afterward he tendered the same money to A. Perry, agent for the plaintiff, and that he is now ready to pay the same or to bring it into court to be subject to the order of the court. The plaintiff replied to this answer denying most of the allegations of the same. Trial was had, and judgment was rendered for the plaintiff. A new trial was granted under § 599 of the code. The action came on again for trial at the April Term, 1871, before the court and a jury. The court ruled that the burden of proof under the pleadings rested upon the defendant. The defendant then offered to introduce evidence to prove the allegations of his answer. The court refused to permit him to do so on the ground that the answer did not state facts sufficient to constitute a defense to the plaintiff's action, and instructed the jury to find for the plaintiff, which they accordingly did without any evidence having been submitted to them. *Butler* excepted, and brings the case here for review. No briefs on file.

*Guthrie, Lacock & Johnson*, for plaintiff in error.
*Albert Perry*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: Two questions are presented to us for our consideration. First, Did the burden of proof under the pleadings rest upon the defendant? Second, Did the answer of the defendant state facts sufficient to constitute a defense to

plaintiff's action? Both of these questions must be answered
in the affirmative. The first in substance has already been
decided in this court in the case of *Wiley v. Keokuk*, 6 Kas.,
94, 105, and we do not now choose to consider the question as
a new or open one. (But see *Perkins v. Ermel*, 2 Kas., 325,
330.) Sustaining the decision of *Wiley v. Keokuk* are the
following cases: *Miller v. Larson*, 17 Wis., 624; *Sexton v.
Rhames*, 13 Wis., 99; *Hartwell v. Page*, 14 Wis., 49; *Alder-
man v. French*, 1 Pick., 115; *Jackson v. Stetson*, 15 Mass., 48;
*Hicks v. Drury*, 5 Pick., 303. And the following cases are in
opposition to such decision: *Klink v. Cohen*, 13 Cal., 623;
*Uridias v. Morrall*, 25 Cal., 31; *Siter v. Jewett*, 33 Cal., 92;
*Mudd v. Thompson*, 34 Cal., 39; *Swift v. Kingsley*, 24 Barb.,
541; *Horner v. McFarlin*, 4 Denio, 509. Of the foregoing
decisions those of Wisconsin and California, and the one
reported in 24 Barb., 541, are really the only ones applicable
to this case, as they are the only ones made under a code prac-
tice similar to ours. The common-law practice in such cases
was probably such as it is stated to be in the case reported in
4 Denio, 509. If so, at common law each count in a pleading
was considered as separate and distinct, and one count could
not be benefited or injured by anything that might be stated
in another count unless it was specifically referred to and made
a part thereof. This is probably still the rule where a pleading
is demurred to; but it is not now the rule, as decided in the
case of *Wiley v. Keokuk*, when the case comes on for trial
upon the evidence. On the trial of a cause the general denial
in an answer must be construed to be a denial only of all the
material allegations of the petition not otherwise or elsewhere
admitted in the answer. The rule laid down in the case
of *Wiley v. Keokuk* is certainly more in accordance with rea-
son and with the spirit of the code than the old common-law
rule, and it is believed to be in exact harmony with the old
chancery rule upon this subject. At chancery a defendant
might either plead or answer to a plaintiff's bill, or do both
if he chose. In his plea, if the bill was single, as it nearly
always was, he could only set up a single defense; (Story Eq.

Pl., § 652, 657;) and of course everything that was said in such a plea must have been considered in construing the plea, and inconsistent statements could not have been allowed. In the answer the defendant might set up several defenses, but he was not required to set them up in different counts as it was required to be done at common law, nor was he required to state them separately and number them as a defendant is now required to do under the code. His answer was a single and entire thing without regard to the number of defenses it contained. It is true that in one respect the answer consisted of two parts, first, the defense of the defendant to the case made by the plaintiff's bill, and secondly, the examination of the defendant on oath as to the facts charged in the bill of which a discovery was sought, and to which interrogatories were addressed; (Story Eq. Pl., § 805;) but this does not change the fact that the answer so far as the setting up of different defenses was concerned was a single and entire thing. It would seem to follow therefore that no one part of the answer could be considered by itself or alone, but all the parts had to be considered together and had to be consistent with each other. Of course, anything that was said in one part of the answer had to be considered in construing whatever was said in any other part of the answer. If the defendant interposed both a plea and an answer to the plaintiff's bill, then if any statement was made in the answer inconsistent with the plea, such statement overruled the plea, and might be read in evidence on the hearing of the cause to disprove the plea; (Story Eq. Pl., 690, 699.) In fact, if the plea and answer even covered the same ground the answer would overrule the plea unless the answer was so framed as to sustain and support the plea; (Story Eq. Pl., 688, 693.) But aside from the rules of equity we suppose that it is pretty well settled that facts admitted by the pleadings cannot be disputed by the evidence but must be taken as true for the purposes of the action; and in the nature of things a party cannot in fact have inconsistent defenses. It is impossible that a thing may be true and untrue at the same time. For this reason parties are not allowed to

set up inconsistent defenses, for such defenses carry falsehood upon their face. Therefore whenever a defendant admits anything in his answer it is right to presume that the admission is intended to modify and control anything else that may be found in the answer in apparent conflict therewith. If the defendant has inadvertently or otherwise made an admission in his answer which he wishes to have stricken out he can have it stricken out at any time, even during the trial, upon such terms as may be just. In the case at bar the defendant admitted in his answer that the plaintiff was the original owner of the property in controversy, and admitted that he held under the plaintiff. There was no need therefore for the plaintiff to offer evidence to prove his title. By the pleadings it devolved upon the defendant to show that something had transpired whereby he had succeeded to the rights of the plaintiff, otherwise he would fail in his defense. He had the affirmative of the issue, and the burden of proof rested upon him. It is true that it did not devolve upon him to prove all the facts alleged in his answer, for some of such facts were admitted by the plaintiff in his reply. But it devolved upon the defendant to prove all the affirmative facts set up in his. answer not admitted by the reply.

II. The next question is whether the answer of the defendant states facts sufficient to constitute a defense to plaintiff's action. Whenever such a question is raised by an objection to receiving any evidence under the answer, a very liberal construction must be given to the answer: 2 Wait's Practice, 311, and cases there cited. The rule in such a case differs to some extent from the rule adopted when the question is raised on demurrer. The objections to the answer, as we understand from counsel for defendant in error, are as follows: First, the contract of Chipman for the sale of the property, was executed in Chipman's own name, and not in the name of Kaulback. Second, Butler dealt with Chipman knowing that Chipman was only an agent of Kaulback, and *elected to give the credit to Chipman* and not to Kaulback, and therefore he cannot now change his election and charge Kaulback. The first objection

we consider as true in fact, but not good in law. The second objection we do not consider as true in fact, although if it were true it would probably be good in law. The answer does not admit that the defendant ever elected to charge Chipman alone, but on the contrary it clearly shows that the defendant intended to hold the plaintiff from the beginning, and considered Chipman only as doing the business as agent for Kaulback. Whether the written memorandum given by Chipman to Butler is conclusive evidence that Butler elected to charge Chipman alone, or whether the defendant can hold the plaintiff notwithstanding that said written memorandum was executed in the name of the agent, Chipman, and not in the name of his principal, Kaulback, are questions which belong more properly to the first objection than to the second, and will therefore be so considered. Hence we shall consider the first objection, and that alone, as we do not think the second is in the case. We suppose that it will be admitted by all parties that no interest or estate passed to Chipman when he became the agent of Kaulback; and we further suppose that it will be admitted that no estate passed to Butler under the contract made with Chipman. It takes a deed of conveyance to pass an estate, and the contract between Chipman and Butler was only a simple contract. But while a simple contract can never convey or pass an estate, it may so bind the parties to convey that a court of equity will compel them to convey in accordance with their contract. Then did the contract of Chipman bind Kaulback to convey said property? "The rule that an attorney or agent to bind his principal must sign the name of the principal, applies only to deeds and not to simple contracts:" *New Eng. Mu. Ins. Co. v. De Wolf*, 8 Pick., 56; (same case; 1 Am. Lead. Cases, 600, 612, 613, and cases there cited.) "Where a contract is made by an agent the principal whom he represents may maintain an action upon it in his own name, although the name of the principal was not disclosed at the time of making the contract; *and although the contract be in writing parol evidence is admissible to show that the agent was acting for his principal:*" *Ford v. Williams*, 21 How., U. S., 287; *Baldwin v.*

*Banks*, 1 Wall., 234, 240, 241; *Nash v. Town*, 5 Wall., 703. "At the time of making a contract of sale the party buying the goods represented that he was buying them *on account of persons resident in Scotland*, but did not mention their names, and the seller did not inquire, but afterwards *debited the party who purchased the goods;* held, that the seller might afterwards *sue the principal* for the price:" *Thompson v. Davenport*, 9 Barn. & Cress., 78; 17 Eng. Com. Law, 45; Smith's Lead. Cases, 358 to 378, side page. "It seems to have been too long and too well settled that an action can be maintained against a principal upon a contract for the sale of goods *made by an agent in his own name* to be now changed, whatever we may have thought of it as an original question, and this as well *where the contract is within the statute of frauds*, as where it is not:" *Dykes v. Townsend*, 24 N. Y., 61. There is no doubt that where such an agreement is made, it is competent to show that one or both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as on the one hand to give the benefit of the contract to one unnamed principal, and on the other hand to charge with liability another unnamed principal; and this whether the agreement be *or be not required to be in writing by the statute of frauds*—and this evidence in no way contradicts the written agreement. "It does not deny that it is binding on those whom, on the face of it, it purports to bind, but shows that it also binds another, by reason that the act of the agent in signing the agreement in pursuance of his authority, is in law the act of the principal:" *Higgins v. Senior*, 8 M. & W., 844; Fry on Specific Perfor., § 148. "There is no doubt that evidence is admissible on behalf of the contracting parties to show that the other was the agent only though contracting in his own name, and so fix the real principal:" *Jones v. Littledale*, 6 Adolph. & Ellis, 490; 33 Eng. Com. Law, 124. Where an attorney in fact executes a bond for the conveyance of title to real estate in his own name without disclosing the name of his principal, equity will enforce the *specific performance of the bond* against the principal or *his heirs: Rogers v. Bracken*,

15 Texas, 564, 567. And where an attorney in fact executes a deed of conveyance in his own name, and not in that of his principal, the deed though void as a conveyance is good in equity as a simple contract, and equity will enforce the principal to execute a valid conveyance: *Salmon v. Hoffman*, 2 Cal., 138, 142; *Pensonneare v. Bleakley*, 14 Ill., 15. See also in this connection *Robbins v. Butler*, 24 Ill., 428. "It would appear on principle that if at the time the contract was signed both A. and B. understood that A. was acting merely as agent for C., and B. were afterwards to sue A. for specific performance as principal, A. might allege the understanding between himself and B. at the time, and give parol evidence of it; and that if the allegation was proved it might furnish a valid defense though the circumstances supposed would of course furnish no defense at law unless by way of equitable plea:" Fry on Specific Performance, § 153. Now if such allegation and proof would be a good defense in equity to A. the agent, it is because C., the unnamed principal, (though known as the principal to both parties at the time of making the contract,) would be liable, and because he would be held to specifically perform the contract. The statute of frauds does not require the party's own signature to the memorandum, but allows it to be "signed by some other person thereunto by him lawfully authorized:" Gen. Stat., 505, § 6; Brown on Frauds, § 367. "The agent's signature may be in his own name. No principal's name, or fact of agency, appearing in the memorandum, parol proof will be admitted to show the agency and hold the real principal:" Brown on Frauds, § 370*b*, and § 364.

Under the authorities we suppose the following to be the rule of law governing this class of cases: Whenever an agent having authority to sell land for his principal makes a contract in writing for the sale of the same in his own name, without mentioning therein the name of his principal, and puts the purchaser in possession thereof, who makes lasting and valuable improvements thereon, if the purchaser shall then be sued by the principal for the recovery of the land, the purchaser may, with proper allegations in his answer, show by parol or other evi-

dence that it was the understanding of the parties at the time of making the contract that the agent was merely contracting for his principal, and that it was the intention of the parties that the principal should be bound by the contract; and if the same be shown, the principal will be held to specifically perform the contract.    The judgment of the court below is reversed, and a new trial awarded.

All the Justices concurring.