## L. W. NUTT v. W. H. HUMPHREY.

1. WRITTEN CONTRACT; *Agency; Competent Parol Evidence.* After a written agreement is executed, it is competent to show by parol evidence that both of the contracting parties were agents for other persons, and acted as such agents in making the contract. This evidence in no way contradicts the written contract. (*Butler v. Kaulback,* 8 Kas. 668; *Wolfley v. Rising,* 12 Kas. 535–538.)

2. PRACTICE; *Chattel Mortgage; Evidence.* When the allegation of the execution of a chattel mortgage and the transfer thereof by an indorsement thereon are alleged in a petition, this is to be taken as true if the answer is not verified by affidavit; but this admission does not prevent the defendant from establishing that the chattel mortgage was fully paid prior to the commencement of the action by the holder to replevy the property therein named from the mortgagor.

*Error from Chase District Court.*

ACTION in replevin, commenced December 5, 1878, by *L. W. Nutt* against *W. H. Humphrey.* The petition (court and title omitted) is as follows:

"Plaintiff states that he has the legal title to and the right to the possession of the following-described personal property, to wit: One six-year-old bay mare, named 'Pet,' of the value of $100; one brown mare with white strip in the face, named 'Bird,' of the value of $30; one four-year-old stallion, named 'Joe,' of the value of $125; that all of the aforesaid property is unlawfully and wrongfully detained from said plaintiff by the said defendant, and has been so detained ever since December 4, 1878, to the damage of said plaintiff fifty dollars; that said plaintiff derived his title to said property and the right of possession thereof by virtue of the following proceedings, to wit: On June 8, 1878, the defendant and May Humphrey and R. A. Humphrey, for a good and valuable consideration, executed to one G. P. Griffith, of Lyon county, Kansas, their two promissory notes, which are described in a chattel mortgage, a copy of which is set out in this petition, and at the same time, to secure the payment of the same, executed and delivered to said G. P. Griffith a chattel mortgage, (the one hereinabove named,) a duly-certified copy of which is attached to and made a part of this petition, marked

'Exhibit A,' for identity, and is here referred to as a part hereof.

"Plaintiff further states that the bay mare, the brown mare and the bay stallion named in the said chattel mortgage, are the property named and described in this petition; that at the time of the execution and delivery of the said notes and mortgage all the parties thereto were residents of Lyon county, Kansas, and the said mares and stallion were taken in said Lyon county, and on June 4, 1878, while all the afore-said parties were residents of said county, and the said mares and stallion were in said county, the said G. P. Griffith duly filed the said chattel mortgage in the office of the register of deeds of said Lyon county, where it has ever since remained on file; that prior to the 4th of December, 1878, the said G. P. Griffith, for a good and valuable consideration, duly assigned the said notes and mortgage to plaintiff, of which assignment on each of said notes the following is a copy, to wit: 'Pay the within to L. W. Nutt, without recourse on me. —G. P. GRIFFITH.'

"And of the assignment on the said mortgage the following is a copy, to wit: 'For a good and valuable consideration to me paid by L. W. Nutt, I hereby sell and assign to him, the said Nutt, all my right, title and interest in and to this mortgage.—G. P. GRIFFITH, per W. A. R.;' that no part of either of the said notes or the said indebtedness has ever been paid, but both of the notes still remain unpaid; that on December 4, 1878, plaintiff found the said property in the possession of defendant, and informed him of the said assignments, and told defendant that he, plaintiff, was the owner of said notes and mortgage, and demanded of defendant the possession of said mares and stallion, which he refused.

"Wherefore, this plaintiff demands judgment against said defendant for the possession of the said bay mare, brown mare and bay stallion, and fifty dollars damages for the detention thereof."

"EXHIBIT A.

"Know all men by these presents, that we, Mary Humphrey, William H. Humphrey and R. A. Humphrey, of the first part, are indebted to G. P. Griffith, of the second part, in the sum of seven hundred dollars, to be paid as follows: Three hundred and fifty dollars on the first day of October, 1878, and three hundred and fifty dollars on the fourth day of April, 1879, according to the terms of two certain promissory notes this day given by said first parties to said second party, payable respectively at the times above specified, with interest at the rate of twelve per cent. per annum.

"Now, therefore, in consideration of such indebtedness, and to secure

the payment of the same, as aforesaid, said parties of the first part do hereby sell, assign, transfer and set over to said party of the second part the property described in the following schedule, viz.: One portable saw mill, known as the Humphrey saw mill, situated on the Cottonwood river, about seven miles from the city of Emporia, in the county of Lyon and state of Kansas; four head of horses, to wit: one six-year-old bay mare, without marks and brands, known as 'Pet'; one brown mare known as 'Bird,' white stripe in face, no marks or brands; one four-year-old bay stallion, named or known as 'Joe,' without marks or brands; one roan stallion, named or known as 'Silver,' without marks or brands; provided, however, that if said debt and interest be paid, as above specified, this sale and transfer shall be void. The property sold is to remain in possession of said parties of the first part until default be made in the payment of the debt and interest aforesaid, or some part thereof; but in case of a sale, or disposal, or attempt to sell or dispose of the same, or a removal of, or an attempt to remove the same from Lyon county, Kansas, or an unreasonable depreciation in the value, or if from any cause the party of the second part shall deem himself insecure, he may take such property, or any part thereof, into his own possession, and upon taking said property into his possession, either in case of default, or as above provided, said party of the second part shall sell the same at public or private sale; and after satisfying the aforesaid debt and interest thereon, and all necessary and reasonable costs, charges and expenses incurred, out of the proceeds of sale, he shall return the surplus to the said parties of the first part, or their legal representatives; and if from any cause said property shall fail to satisfy said debt and interest aforesaid, said parties of the first part hereby agree to pay the deficiency.

"In witness whereof, the said parties of the first part have hereunto set their hands, this eighth day of June, 1878.        MARY HUMPHREY.
                                                    W. H. HUMPHREY.
                                                    R. A. HUMPHREY.

"STATE OF KANSAS, LYON COUNTY, ss.—This instrument was filed for record on the fourth day of July, 1878, at one o'clock P. M., and duly recorded in book No. 3 of C. M., at page 25.

                                    T. R. PAGE, Register of Deeds.
                                    By A. R. Bancroft, Deputy.

"For good and valuable consideration to me paid by Lewis Nutt, I hereby sell and assign to him, the said Nutt, all my right, title and interest in and to this mortgage.        G. P. GRIFFTH, per W. A. R."

This assignment was filed the 3d day of December, 1878. Thereafter, and on July 14, 1883, the defendant, having theretofore filed an answer, and one amended answer, filed his second amended answer in words and figures following:

"Comes now the defendant, W. H. Humphrey, and for a second amended answer to plaintiff's petition herein, denies each and every allegation thereof, except the execution of the chattel mortgage therein described.

"Second Defense: Defendant admits the execution of the notes and mortgage described in plaintiff's petition, and says that this defendant in the name of his wife Mary Humphrey, and Oscar J. Hunt in the name of his wife Sarah A. Hunt,

on the 22d day of July, 1878, entered into a contract in words and figures as follows, to wit:

'A memorandum of agreement between Sarah A. Hunt of the first part, and Mary Humphrey of the second part, witnesseth: that the party of the first part has sold unto the party of the second part the following-described land, to wit: Commencing at the S. W. corner of the S. E.¼ of N. W.¼, sec. 23, town 19, range 9; thence west 38 rods; thence north 76 rods; thence west 42 rods; thence north 4 rods, to the north bank of Cottonwood river; thence along the top of said bank to a park 19 rods directly north of the center of N. W.¼; thence south to the place of beginning, all of said land lying in the N. W.¼ 23–19–9, containing about 26 acres, more or less; also $\frac{39}{100}$ acres of land as described in a bond for a deed from Henry Wilson, and adjoining the within-described land on the south, with all appertaining and thereto belonging, for and in consideration of $3,000, to be paid as follows: One steam saw mill, at $2,000, and $1,000 with 10 per cent. interest from this date, said $1,000 to be due in three years from this date.

'The said first party agrees to clear the above-described property of all incumbrances that are now upon it, of any kind whatever.

'The party of the second part sells to the party of the first part a steam saw mill with all the appurtenances thereunto belonging, and warrants the title to the same, and that it is free and clear from all incumbrances except a certain chattel mortgage given to G. P. Griffith for the sum of $700, bearing interest at the rate of 12 per cent., and due April 4, 1879. The said second party does hereby agree to pay off said mortgage on or before the 4th day of April, 1879; and if the second party should fail to pay the said G. P. Griffith the said $700, as above set forth, then the party of the first part may pay the same, and it shall form a lien upon the above-described land sold to the party of the second part.

'July 22, 1878. SARAH A. HUNT. [Seal.]
MARY HUMPHREY. [Seal.]

'STATE OF KANSAS, COUNTY OF LYON, ss.—On the 22d day of July, 1878, personally appeared before me, John V. Saunders, a justice of the peace of the city of Emporia, Lyon county, Kansas, Sarah A. Hunt and Mary Humphrey, known to me to be the identical persons whose signatures appear to the foregoing instrument, and acknowledged the execution of the same.

'In witness whereof, I have hereunto subscribed my name, the 22d day of July, 1878. JOHN V. SAUNDERS, *Justice of the Peace.*'

"The defendant, further answering, says, that the said steam saw mill was delivered to the said Oscar Hunt as agreed, but says and avers that the said Oscar J. Hunt did not give him or his wife aforesaid a good and sufficient deed for the premises described and specified in said agreement, and that the said Oscar J. Hunt nor his wife have ever deeded said real estate to this defendant or his wife, for the good and sufficient reason that all of said property was incumbered by mortgages and other liens for as much as it was worth; that finding the situation of said property, this defendant failed and refused to pay the said chattel mortgage of $700 on said saw mill and other property, to wit: the horses replevied by the plaintiff in this suit.

"Defendant, further answering, says, that it became and was

the duty of the said Oscar J. Hunt and his wife Sarah A. Hunt to pay said chattel mortgage on said saw mill, and the horses in controversy, but that the said Oscar J. Hunt, conspiring with the plaintiff L. W. Nutt to cheat and defraud this defendant, instead of canceling said chattel mortgage and discharging the lien thereof when it was paid, fraudulently had it transferred to L. W. Nutt, the plaintiff, so that the said Nutt could claim and sell the horses in controversy in this suit and cheat and defraud the defendant. And the said defendant, further answering, says, that all the property mentioned in the above agreement to be conveyed to said Mary Humphrey by Sarah A. Hunt was in fact and in law the property of her said husband, Oscar J. Hunt, and that the said Sarah A. Hunt had no interest in the same, but it was held in the name of his wife to cheat and defraud his creditors and especially this defendant; that the said Oscar J. Hunt, at the same time being heavily in debt, held property in the names of his wife's mother, Mrs. Ann Nutt, and his wife, and L. W. Nutt; that Sarah A. Hunt, her mother Mrs. Ann Nutt, and brother L. W. Nutt, had no property or means, but that all the property held in their names or either of them was in fact the property of Oscar J. Hunt and held in their names for the purpose of cheating and defrauding their creditors and more especially this defendant. Defendant further says, that the money paid Griffith for said chattel mortgage was the money and property of Oscar J. Hunt, and that in fact said mortgage was fully paid and should have been discharged, but that the said Oscar J. Hunt and the plaintiff L. W. Nutt, conspiring to cheat and defraud this defendant, had said mortgage assigned to said plaintiff so that he might wrongfully get possession of the horses described in plaintiff's petition. Defendant further says, that said plaintiff has no money of his own in said chattel mortgage, nor has he any interest in this suit, but that said Oscar J. Hunt furnished all the money and is the real party in interest herein.

"Wherefore, the defendant prays that he have restitution of all the property mentioned in plaintiff's petition, and a judgment for the value of the use thereof, to wit, $1,000; and that in the event a return and restitution thereof cannot be had, then that he have judgment for the value of the same, to wit, $2,000, and for costs of this suit."

On July 24, 1883, the plaintiff filed the following demurrer:

"Comes now the plaintiff, and for demurrer to the second

pretended defense attempted to be set out in the second amended answer of defendant filed herein July 14, 1883, says, that said second defense of said answer does not state facts sufficient to constitute any defense to the plaintiff's claim and cause of action set out in plaintiff's petition."

On December 13, 1883, the court, after argument and due consideration thereof, overruled the demurrer. The plaintiff excepted, and brings the case here.

*J. Jay Buck*, and *L. B. Kellogg*, for plaintiff in error.

*Thos. O. Kelley*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The ruling of the district court is claimed to be erroneous, principally upon the ground that the written contract set out in the answer showing that two women made a trade and agreement, is not admitted by the demurrer to have been made by their husbands, William H. Humphrey and Oscar J. Hunt; also, that as none of the persons signing the agreement are parties to this action, nor in any degree connected with it, the agreement is wholly immaterial. Further, it is contended that as the indorsement of the note and mortgage to the plaintiff is not denied under oath, the ownership is admitted by the answer, and therefore the defendant cannot urge that it was the duty of Oscar J. Hunt to pay the mortgage, or that there was any conspiracy entered into between him and the plaintiff to cheat and defraud the defendant. It is true that the written contract is signed by Sarah A. Hunt and Mary Humphrey, but it cannot be doubted that parol testimony is admissible to show that one or both of the contracting parties to a written contract were agents of other persons, and acted as such agents in making the contract so as to give the benefit of the contract to an unnamed principal and to charge with liability an unnamed principal. Such evidence in no way contradicts the written agreement. (*Dykes v. Townsend*, 24 N. Y. 61; *Butler v. Kaulback*, 8 Kas. 668; *Wolfley v. Rising*, 12 id. 535–538; *Railway Co. v. Thacher*, 13 id. 564.)

The answer alleges that the defendant, in the name of his

wife Mary Humphrey, and Oscar J. Hunt, in the name of his wife Sarah A. Hunt, on the 22d day of July, 1878, executed the agreement. Under the allegations of the answer, evidence is admissible that Mary Humphrey and Sarah A. Hunt were only the agents of the real contracting parties. The demurrer therefore not only admits the written agreement set up in the answer, but admits that the defendant and Oscar J. Hunt were the real principals.

If Hunt paid the mortgage, then under the written agreement, if he was a party thereto, the amount so paid may be a lien upon the land named in the agreement, but is not a lien or a claim upon the personal property described in the petition.

It is urged that under the agreement there was reserved a mere *option* on the part of Mrs. Hunt, acting for Oscar J. Hunt, to pay off the chattel mortgage. If, however, Hunt actually paid the mortgage, then within the terms of the agreement he exercised his option to pay the same. If, thereafter, to cheat and defraud the defendant, he had the note and mortgage transferred to the plaintiff without any consideration, this gives the latter no claim thereunder as against the defendant.

As the answer is not verified by affidavit, the allegations of the indorsements in the petition are admitted, but this admission does not prevent the defendant from establishing that the chattel mortgage was fully paid prior to the commencement of this action.

We have examined the other questions presented, but do not think them important.

The judgment of the district court must be affirmed.

VALENTINE, J., concurring.

HURD, J., not sitting in the case.