CALDWELL, Ex'x, v. BAXTER et al.

No. 19760. Opinion Filed Sept. 22. 1931.

Withdrawn, Corrected, Refiled, and Rehearing Denied April 26, 1932.

Application for Leave to File Second Petition for Rehearing Denied June 21, 1932.

Miley, Hoffman, Williams & France, for plaintiff in error.

Holtzendorff & Holtzendorff and F. H. Reily, for defendants in error.

McNEILL, J. This is an appeal from the district court of Rogers county. The parties will be referred to as they appeared in the trial court. Kate Fox Baxter and Zella Fox McBride, defendants in error, as plaintiffs, and Geneva Caldwell, executrix of the estate of Charles . W. Caldwell, deceased, plaintiff in error, as defendant.

On March 17, 1925, Kata Fox Baxter and Zella Fox McBride filed their petition in said district court against said defendant. Said plaintiffs alleged therein the execution and delivery of a certain promissory note to Mrs. Josephine Fox by Charles W. Caldwell, which note was in the sum of $1,500, dated April 17, 1920, being payable on demand, after date, to the order of Mrs. Josephine Fox, with interest thereon, at eight per cent. per annum. Said plaintiffs allege that said Josephine Fox is deceased, and that said Charles W. Caldwell, the maker of said note, is also deceased; that said plaintiffs are the successors in law, the owners of said note, and that the said Geneva Caldwell is the executrix of the estate of Charles W. Caldwell, deceased.

Plaintiffs further allege that the claim for the amount of the note was duly presented to said executrix and by said executrix on February 21, 1925, rejected, and that the same was also, on the 25th of March, 1925, rejected by the judge of the county court of Rogers county, Okla. Plaintiffs pray for judgment for the amount of said note.

A demurrer was filed to the amended petition, and the same was overruled and defendant filed her answer, which, in part, is as follows:

"Comes now the defendant and for her answer to the plaintiffs' petition, alleges and states:

"(1) That the defendant denies each and every material allegation contained in plaintiffs' petition, except such only as are hereinafter specifically admitted, qualified, or explained. * * *

"(3) This defendant only being the executrix of the estate of Charles W. Caldwell, deceased, and having no personal knowledge or information as to whether or not Charles W. Caldwell, deceased, made, executed, and delivered to Josephine Fox, deceased, the promissory note sued upon in this cause of action, she, therefore, denies the execution and delivery of said promissory note. * * *"

Said defendant also for further answer states in paragraph 4 of said answer:

"* * * That should it be proven to the satisfaction of the court that the said Charles W. Caldwell in his lifetime made, executed, and delivered the promissory note, * * * and set out in plaintiffs' petition, that then and in that event, the defendant states that the execution and delivery of said promissory note was wholly without consideration, and in this connection, the defendant desires to state that if it is the promissory note of the said Charles W. Caldwell. that it was made, executed, and delivered to the said Mrs. Josephine Fox for the following reasons and for no other, and that is this : * * * The said Mrs. Josephine Fox being a relative of the said Charles W. Caldwell and this . defendant, she approached the said Charles W. Caldwell and requested him to receive and accept the $1,500 of her money, for the purpose of investing said amount in certain mining stock; that the said Charles W. Caldwell received and accepted the said $1,500 for the purpose of investing said money in certain mining stock for the benefit of the said Mrs. Josephine Fox and for the purpose, and the sole purpose only. the said Charles W. Caldwell, made, executed, and delivered some kind of a memorandum to show that he had received the said sum of money and for no other purpose. to invest said money for the said Mrs. Josephine Fox and that the said Josephine Fox was to hold and retain the said memorandum until the said Charles W. Caldwell had invested said $1,500 in mining stock as agreed upon, or until he had returned said money to the said Josephine Fox."

In paragraph 5 said defendant admits receiving from Josephine Fox $1,500. and investing same in certain mining stock. which defendant now tenders into court to be delivered to plaintiffs. The answer was verified as follows:

"State of Oklahoma, County of Rogers, ss.

"Geneva S. Caldwell, of lawful age, being first duly sworn, says:

"That she is the duly appointed, qualified, and acting executrix of the estate of Charles W. Caldwell, and that she is the defendant in the above and foregoing answer to plaintiffs' petition and knows and understands the facts and allegations alleged and contained in said answer, and that this affiant believes the facts and allegations stated in the above and foregoing answer to be true."

In the opening statement of defendant to the court and jury, counsel for the defendant stated, on page 62 of the record, as follows:

"The defendant in this case, on account of the fact of of being the wife and the widow of Dr. Caldwell, and having the work of the keeping of the home, of course, necessarily did not have knowledge of the facts that constituted the business affairs of Dr. Caldwell, and for that reason, not having the specific knowledge, she, as the administratrix of the estate, denies the execution of this note by Dr. Caldwell, but states to the court and jury, that, if it is proven or it develops that it is Dr. Caldwell's note given to Josephine Fox, the evidence will show by Mrs. Caldwell that the note was given for this purpose; Josephine Fox, the aunt of Mrs. Caldwell, came to the home of Dr. Caldwell and Mrs. Caldwell to stay sometime, probably to make her home; that will be disclosed to you by Mrs. Caldwell; and at the time she came there—if that is the note in question—she had $1,500 in cash with her. The evidence will show that Mrs. Caldwell and Dr. Caldwell, both of them, did not want that money to remain in the home; and they requested her to deposit this money in the bank at Chelsea. She being an elderly lady, the evidence will show, she had peculiarities about banks: you know, some people do have; and she would not deposit the money in the bank. Then Dr. Caldwell, as will be testified. told her that he would take the money and deposit it for her. No, she didn't want that done. Then she requested Dr. Caldwell to take the money and invest it for her in some productive stock, or in some way that it might be a profitable investment to her."

Also, on page 64 of the record:

"* * * At this time the evidence, I think, will show to you that Mrs. Fox requested. in some way, that Dr. Caldwell invest her money in this particular stock. I think the proof will show that at this time there was none of the stock available, but at some time in the future, I think the evidence will show, the doctor told her, probably, it would be invested in that stock.

"Now, with that understanding between them, Dr. Caldwell—if this is the note in question—gave her a demand note, payable now, just to recognize the fact that he took the money rather than to have it just in the home there, until he could deposit it in the bank for her, or, rather. until he could get the money out of the house and in some safe place, because she would not permit it to be deposited there in her name, or until he could invest it for her at her request.

"The evidence will show that sometime about, I think, the 20th of September, the Doctor invested this particular, specific $1,500 in mining stock in the Texhoma Mining Company, I believe it is called, in Mexico. * * *"

Counsel further stated in his opening statement that the administrator appointed in Athens, state of Tennessee, of the estate of Josephine Fox, wrote to Dr. Caldwell in his lifetime, in the early part of 1921, in regard to this note, and that Dr. Caldwell replied and informed the administrator "what this money was invested in and what it was for, and stated to him at that time that, if he, Mr. Madison, would send him, Dr. Caldwell, his note, he, Dr. Caldwell, would send him this stock."

Again, counsel for the defendant states, in the opening statement:

"Gentlemen of the jury, if the evidence appears before you and the situation is disclosed from the witness stand to the extent that I have told you about, we think we will have established conclusively to your minds that there is no consideration for this particular note."

It is apparent from this statement of counsel in reference to the issues attempted to be joined and presented to the court and jury that there is an indirect admission of the execution of the note by counsel for defendant in his statement that the same was executed without consideration and that the money therein represented was expended for the purchase of stock. In such statement counsel specifically states to the court and jury that Dr. Caldwell, in his letter to the administrator of the estate of Josephine Cox, deceased, stated "that, if he, Mr. Madison, would send him, Dr. Caldwell, his note, he, Dr. Caldwell, would send him this stock." This is an admission of the execution of the note, not by counsel for the executrix, but a statement made by the deceased.

The evidence shows that Mrs. Josephine Fox, deceased, was the aunt of Geneva Caldwell, executrix of the estate of Charles W. Caldwell, deceased, and that a few months prior to the death of Mrs. Fox, Dr. Caldwell invested the money in mining stock. The depositions taken and introduced on the part of plaintiff show that Mrs. R. C. Baxter came to Oklahoma and took the

matter of the payment of this note up with Mrs. Caldwell, after the death of Dr. Caldwell. She, Mrs. Baxter, testified that she had a conversation, in reference to this note, with Mrs. Caldwell, and testified as follows:

"Q. After your husband obtained the note in question, what steps, if any, did you take to enforce collection or payment of the note? A. We took the note to Oklahoma, thinking it was a straight demand note, and that she would pay it, it shows on the face of the note. * * * Q. To what place in Oklahoma did you take it? A. To Chelsea. Q. To whom dd you present it for payment? A. Mrs. Eva Caldwell, or Geneva. Q. What reply did she make or explain for not paying same? A. She said if it had been presented to her husband during his lifetime, he would have paid it, but she was not paying any of his bills, and furthermore, it was outlawed. * * * Q. Who was present when the conversation was had? A. My husband, Mr. F. L. Dixon, and her son. Q. Where was the conversation had? A. In her sitting room. Q. Was any other excuse offered by Mrs. Caldwell? A. She said she knew her husband owed this for she saw the note drawn up here, and pointed to a little table. Q. Was any other statement made by Mrs. Caldwell that you now recall that is touching to the note? A. I don't think so. I think that was about the sum and substance about what she said, she said she would not pay it, that she had nothing to do with payment of his bills. * * * Q. What relation was Dr. Caldwell to Mrs. Fox? A. A nephew, just by marriage."

The deposition of R. C. Baxter, the husband of Mrs. R. C. Baxter, was read in evidence, and he testified that he went to Mrs. Caldwell's house and told her that "we had come to collect the money on the note," and that they had the note at the time. The witness also testified:

"Q. What statement did she make, if any, as to the genuineness of the signature? A. She said that her husband borrowed the money on the note, she seen the note drawn up and pointed to a table in the house, which she said she had seen, but she said she had nothing to do with paying Caldwell's debts, and furthermore the note was outlawed, and she would not pay it. * * * Q. Who was present when this conversation was had? A. F. L. Dixon, my wife, Mrs. Caldwell, and her son was sitting just inside of the partition in the room. * * * Q. Is that about the extent of the transaction, as you now recall? A. Yes, sir; that is about the substance of our conversation. She remarked if the note had been sent out to them during Mr. Caldwell's lifetime, he would have paid it; that she knew he got the money and seen him draw up the note, but she did not have anything to do with Caldwell's debts, and beside it was outlawed. * * * Q. Who is this man Dixon, you speak of? A. F. L.

Dixon of Shawnee, Okla. Q. What relation to you? A. Brother-in-law of mine."

Mrs. Bertha Dille testified she found the note of Charles W. Caldwell for $1,500 among the effects of Mrs. Fox after her death; that she always carried these notes with her, tied up with a string; that they were in a little muslin bag pinned with a safety pin; that among them was some money and jewelry, and that these items were all turned over to her administrator. The witness also testified:

"Q. Did you ever hear Mrs. Fox discuss the Caldwell note? A. Yes, I heard her mention it several times, she always referred to it as a loan she had made to 'Dr.' She wanted to call the loan at the time I was about to trade for property to assist me in the trade. She often mentioned that fact that she was getting a much higher rate of interest on this note than she had been used to in Tennessee."

Plaintiffs introduced the note in question without proof of its due execution, over the objection of defendant. The defendant interposed a demurrer to the evidence and the same was overruled by the court. The defendant, after being duly sworn, was called as a witness, and the plaintiffs interposed an objection to the introduction of any testimony on behalf of the defendant for the reason that defendant's answer wholly fails to state facts sufficient to constitute a defense to the cause of action, set forth and pleaded in the plaintiffs' petition. After the same had been presented to the court, the court sustained an objection to introduction of evidence, and directed the jury to return a verdict for plaintiffs for the amount sued for, over the objection of the defendant. However, the court gave permission to the defendant to introduce any evidence that defendant might have as to the denial of the execution of the note, which offer the defendant refused, taking the position that the burden was not on the defendant to prove the denial of the execution of the note. The court took the position that the plaintiffs had established the execution of the note. and that the answer did not state any defense except upon the execution of the note.

Defendant complains that it was reversible error for the trial court to permit the introduction in evidence of the promissory note in question, without proof of its due execution. On the other hand, plaintiffs contend that a reading of the answer, and especially paragraph 4 of the same, and the statement of counsel for defendant at the beginning of the trial, and the other statements of counsel, clearly indicates that there was no denial of the execution of this note,

but an admission thereof, and that plaintiffs were not compelled to prove the execution of the note before the same could be introduced in evidence.

Paragraph 3 of defendant's answer states that the defendant had no personal knowledge or information as to whether the note was executed, and therefore they denied it. In paragraph 4 they attempt to set out a defense to the note to the effect that, if it is proven to the satisfaction of the court that the deceased executed and delivered the promissory note as set out, the note was without consideration. This portion of the answer by such allegations indirectly admits the execution of the note. Fagerstrom v. Rappapart (Minn.) 223 N. W. 143.

We first discuss the admission of the execution of the note under the pleadings.

Section 273, C. O. S. 1921, provides as follows:

"The answer shall contain:

"First. A general or specific denial of each material allegation of the petition controverted by the defendant. * * *"

Section 287, C. O. S. 1921, provides as follows:

"In all actions, allegations of the execution of written instruments and indorsements thereon, of the existence of a corporation or partnership, or of any appointment of authority, or the correctness of any account duly verified by the affidavit of the party, his agent, or attorney, shall be taken as true, unless the denial of the same be verified by the affidavit of the party, his agent, or attorney."

Section 290, C. O. S. 1921, provides as follows:

"The affidavit shall be sufficient if it state that the affiant believes the facts stated in the pleadings to be true."

This court said in the case of Twist v. Colonial Trust Co., 53 Okla. 800, 158 P. 938:

"Of course, denial of 'the same' means denial of the execution; and verified by the affidavit of 'the party,' means the party making the denial."

We obtained our statute in reference to the verification of the answer concerning the execution and indorsement of instruments as provided by section 287, C. O. S. 1921, from the state of Kansas, and the Supreme Court of that state holds that the execution of the note shall be taken as true unless denied by verified answer, and that the statute requires a specific answer, and is "not to be satisfied by a verified general denial, for a general denial states no facts." Bates' Pleading, Practice, Parties, and

Forms, vol. 2, p. 1587; Kimble v. Bunny, 61 Kan. 665, 60 P. 746. In that case plaintiff below, Frederick Bunny, brought an action against Henry Kimble based on three promissory notes alleged to have been executed by the latter. Defendant filed an answer by way of general denial with the verification as follows:

"Comes now the defendant, Henry Kimble, and for his answer to the plaintiff's petition herein, denies each and every allegation therein contained.

"State of Illinois, County of Grundy, ss:

"Henry Kimble, being of lawful age, and being first duly sworn, deposes and says that he is acquainted with the facts set forth in the above and foregoing answer, and that the facts therein stated are true. So help me God."

"(Signed)"

The same was subscribed and sworn to before a notary public.

The court says:

"* * * This answer contains no statement of facts, and the verification subjoined to it is appropriate to that required to be attached to a pleading which avers facts affirmatively. If the answer had contained a specific denial that the defendant below had executed the notes, copies of which were set forth in the petition, then the verification would have been sufficient. In such case an affirmative statement would appear, to which the language of the affidavit attached to the answer would have been applicable. In a general denial there are no facts stated. The pleading contains denials, but the verification employed in this case contains no statement that the denials are true. Further, the defendant below in the affidavit states: 'That he is acquainted with the facts set forth in the above and foregoing answer, and that the facts therein stated are true.' This was probably intended to mean that he was acquainted with the facts set forth in the petition; for the answer is negative in character, and contains no affirmative statement of facts. It is quite clear that the general denial, thus verified, did not put in issue the execution of the notes. The judgment of the court below will be affirmed. All the justices concurring."

Of course, if defendant had filed a verified general denial, the same would have been sufficient to join issue on the execution of a written instrument. Lilly v. Russell & Co., 4 Okla. 94, 44 P. 212. This the defendant failed to do. The purpose of pleading is to join issue and not to evade the same.

The Supreme Court of Utah, in the case of Intermountain Ass'n of Credit Men v. Mahleres, 282 P. 1029, in considering their

statute similar to section 287, C. O. S. 1921, states:

"In two former decisions of this court, the statute quoted was held to mean that, unless there is a specific as well as a verified denial of the matters enumerated therein, they shall be taken as true. Brewer v. Ronney, 50 Utah, 236, 167 P. 366; Gray's Harbor Lbr. Co. v. Burton Lbr. Co., 65 Utah, 333, 236 P. 1102. * * * The defendant's answer to the matters alleged was a general denial and not a specific denial. It was therefore not sufficient to put the plaintiff upon proof of the allegations, but the same were entitled to be taken as true."

In the case of Seattle Nat. Bank v. Carter, 13 Wash. 281, 43 P. 331, the Supreme Court of Washington, after a careful review of the authorities, held in reference to pleading inconsistent defenses that:

"Totally inconsistent defenses are not allowable under the Code practice."

The court in the opinion says:

"On this subject of inconsistent defenses, there have been many conflicting decisions, but we think their origin has been in a misunderstanding of the cases cited and relied upon as sustaining the doctrine that inconsistent defenses, under the reformed practice of pleading, could be maintained. * * * Under the common-law practice pleadings were based upon fictions, but the Code has undertaken to work a revolution in that respect, and under its provisions it is the evident intention that the pleadings shall be based upon facts which are susceptible of proof. Our Code provides that the complaint shall contain a plain and concise statement of facts constituting a cause of action, and while it does not, in so many words, provide that the answer shall contain a statement of facts, it does so, in substance, so far as any affirmative allegations are concerned; for the language of the Code is that it shall contain a statement of any new matter, constituting a defense or counterclaim, in ordinary and concise language. * * *

"It is true that it further provides that the defendant may set forth by answer as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal, or equitable, or both. This is all the authority there is for claiming that, under the Code, the defendant is allowed to plead inconsistent defenses. It is true that he may set forth as many defenses as he has, but it could not have been the intention of the Code that he should set forth anything that was not true; for, if it was not true, it would not be a defense. * * * The evident intention of the Code was * * * to inform the defendant what the true cause of action or complaint was; and it was just as much the intention of the framers of the Code to compel the defendant, if he had an affirmative defense, to inform the plaintiff by his answer what that affirmative defense was. There can be no reason or right in any other theory. The object of the Code was to simplify lawsuits. * * *"

The Supreme Court of Kansas, in the case of Fetzer v. Williams, 80 Kan. 554, 103 P. 76, cites the foregoing case, and in speaking of inconsistent defenses states:

"Many of the cases cited, however, in reality merely decide that the particular defenses under consideration were not, in fact, inconsistent. The seeming difference of opinion is also in part accounted for by the fact that some of the courts apply the term 'inconsistent' to defenses which are not so in fact. The decisions are elaborately reviewed in Seattle National Bank v. Carter, 13 Wash. 281, 43 P. 331, and in a note thereto in 48 L. R. A. 177. This court has long been committed to the proposition that a general denial is regarded as modified by admissions made in stating a special defense, which is only an application of the broader principle that every pleading must be consistent with itself. Wiley v. Keokuk, 6 Kan. 94; Butler v. Kaulback, 8 Kan. 668."

The Supreme Court of Washington, in discussing an answer very similar to the answer in the case at bar, in the case of Lamberton v. Shannon, 13 Wash. 404, 43 P. 336, states in the syllabus as follows:

"An answer, in an action against defendants as makers of a note, denying that they executed the note as principals, and denying 'each and every part * * * of the complaint, except as herein expressly admitted, explained, or qualified,' followed by an affirmative defense that they signed as sureties, which was demurrable, and inconsistent with a general denial, did not disclose an independent defense, to prevent plaintiff from taking judgment on the pleadings."

In the body of the opinion, the court states:

"It is contended by the appellants that the affirmative defense should not be considered with reference to that portion of the general denial which provides that the defendants deny, except as herein 'expressly admitted, explained, or qualified;' that that exception applied only to the matters and things set out in the first answer or the general denial; that it had no reference to the subsequent answer or the affirmative allegations pleaded in the second answer; and that, consequently, a good independent defense had been pleaded, which should prevent the plaintiffs from taking judgment upon the pleadings. We do not think there is the least merit in this contention. The expression, 'except as herein expressly admitted, explained, or qualified,' evidently was intended to refer to both the first and second defenses. This is the only construction which renders the pleadings intelligible, and, after using the expression above quoted,

the answer proceeds in the second answer to set out the qualifications and admissions, which we must hold, under the law announced in Seattle Nat. Bank v. Carter (Wash.) 43 P. 331; Allen v. Olympia Light & Power Co. (Wash.) 43 P. 55, and Allen v. Chambers (Wash.) 43 P. 57, lately decided by this court, are inconsistent with the general denial, and therefore that the answer does not plead a defense which will place the plaintiffs upon proof of their allegations."

This court, in the case of Conwill v. Eldridge, 71 Okla. 223, 177 P. 79, in a discussion of this question, states:

"The earliest reported case we have been able to find is that of Wiley v. Keokuk, 6 Kan. 94, rendered in 1870. The third paragraph of the syllabus reads:

"'Whatever is admitted in a special defense operates, so far, as a modification of a "general denial" and is to be taken as true without other proof.'

"The rule here announced was followed in the case of Butler v. Kaulback (1871) 8 Kan. 671, in which the court said: 'It is pretty well settled that facts admitted by the pleadings cannot be disputed by the evidence, but must be taken as true for the purposes of the action; and in the nature of things a party cannot, in fact, have inconsistent defenses. It is impossible that a thing may be true and untrue at the same time. For this reason parties are not allowed to set up inconsistent defenses, for such defenses carry falsehood upon their face. Therefore, whenever a defendant admits anything in his answer, it is right to presume that the admission is intended to modify and control anything else that may be found in the answer in apparent conflict therewith.'

"It was also followed in the case of Yandle v. Crane (1874) 13 Kan. 344. In the case of Barnum v. Kennedy (1878) 21 Kan. 181, the third paragraph of the syllabus reads:

"'The petition alleged the making of certain assignments. The answer, besides a general denial, contained an averment that the said alleged assignments were made without consideration, and not in good faith. Held, that the fact of the assignment was thereby admitted.'

"See, also Bierer v. Fretz (1884) 32 Kan. 329, 4 P. 284; Wright v. Bacheller (1876) 16 Kan. 259.

"In the case of Losch v. Pickett (1887) 36 Kan. 216, 12 P. 822, the first and second paragraphs of the syllabus read as follows:

"'1. A party should be bound by the allegations of his pleadings deliberately made, and should not be allowed to obtain benefits from contradictory and inconsistent allegations therein, even if made in separate counts.

"'2. The spirit of our Civil Code is that a party shall state in his pleadings the real facts of his case, and not falsehoods or fictions. A thing cannot be true and untrue at the same time; and any pleading containing allegations made by the same party both affirming and denying a particular thing carries falsehood upon its face, and in such a case the court may consider as true such of the allegations as are against the pleader.'

"The rule of procedure announced in these earlier cases has been adhered to by the Kansas courts up to the present time. Osborne v. Shilling, 74 Kan. 675, 88 P. 258, 11 Ann. Cas. 319; Mitchell v. Ripley, 5 Kan. App. 818, 49 P. 153; Fetzer v. Williams, 80 Kan. 554, 103 P. 77; Felix v. Railway Co., 60 Kan. 467, 57 P. 128. * * *

"The foregoing authorities announce, in effect, the following rule: Although, under the Code, a defendant may set forth in his answer as many grounds of defense as he may have, whether they be such as have been heretofore denominated legal or equitable, or both, yet, where he makes repugnant or inconsistent defenses, he will be deemed to admit that defense most unfavorable to himself, and the plaintiff may use the admission as evidence to establish that particular allegation in his complaint. * * *

"The practice under our Code of Civil Procedure does not recognize fictions (section 4767, Rev. Laws 1910) or that a verified pleading, as was the defendants' answer in the instant case, can contain anything other than a truthful statement of the facts relied on by the pleader, set forth in 'ordinary and concise language, and without repetition.' Section 4745, Rev. Laws 1910.

"We can see no good reason why the allegations of a verified pleading, even if not conclusive against the pleader, should not be treated as admissions against the person or persons making them, and that as between the denial of a fact alleged in the complaint and the admission of the same fact in some other part of the answer, in a separate or special defense, the admission should not be taken as true so as to render it unnecessary for the plaintiff to establish that particular fact by testimony."

To the same effect on this question is the holding of this court in an opinion by Mr. Justice Hardy, in the case of Schuber v. McDuffee, 67 Okla. 160, 169 P. 642.

In view of the foregoing authorities we think the correct rule is that a defendant may set forth in his answer as many grounds of defense as he may have, whether they be such as have heretofore been denominated legal or equitable, or both, yet, where he makes repugnant defenses, he will be deemed to admit that defense most unfavorable to

himself, and the plaintiff may use the admission as evidence to establish that particular allegation in his complaint.

It is contended by defendant that this rule ought not to be applied to administrators and executors, for the reason that they may fail in their proof of nonexecution by reason of the death of the alleged makers. Our statute makes no exceptions as to administrators and executors, as is done in the case of a guardian, as provided by sections 280 and 288, C. O. S. 1921.

This question was before the Supreme Court of Alabama in 1828, in the case of Martin, Adm'r, v. Dortch, 1 Stew. 479, wherein an action of debt was instituted against Martin, as administrator of Heslip, on an instrument, which, on oyer, was set out in the pleadings. The second paragraph of the syllabus in that case is as follows:

"Administrators, as well as others, when they plead non est factum to a bond made by their intestate, must verify the plea by affidavit."

In the body of the opinion, the court states:

"To determine whether an executor or administrator is authorized to plead non est factum generally or specially, without accompanying his plea with an affidavit of its truth, reference must be had to the statute (Laws, Ala. 454) the language of which is found to be 'that no plea of non est factum shall be admitted to be pleaded but when accompanied with an affidavit of its truth.'

"The statute contains no qualification or exception as to persons, but applies to all pleas of that denomination. It is true that the representative may not possess information which will enable him to deny so absolutely the fact of execution, as the party, if living, might be required to do; yet, he can safely swear to the best of his information and belief. This it is conceived would be sufficient. To permit representatives to deny the execution of such evidences of debt without restraint, and to submit the plaintiff in all such cases to the necessity of proving the due execution of the instrument by the deceased, and the authority of his agent or attorney, when the contract purports to have been executed by one, and this on bare averment by plea, would produce all the convenience and difficulty which the statute designed to avoid."

Also, in the year 1825, the Supreme Court of the state of Missouri, in the case of Soulard and Mackey, Executor and Executrix, v. B. and J. Pratts, reported in 1 Houck, page 310, held that, in an action against an executor or administrator on a note of the testator or intestate, the handwriting need not be proved unless the execution be denied under oath. This was an action of assumpsit brought on a promissory note and the plea was nonassumpsit. The court in the opinion states:

"The plaintiffs in error contended that the act of the Legislature of 1807, is not to be construed to extend to executors, but that they may be admitted to plead a plea, denying the execution of a writing, without supporting it by oath or affirmation.

"The words of the act are 'that whenever any suit shall be commenced in any court, founded on any writing, whether the same be under seal or not, the court before whom the same is depending, shall receive such writing in evidence of the debt or duty for which it was given, and it shall not be lawful for the defendant, in any such suit, to deny the execution of such writing, unless it be by plea, supported by the affidavit of the party putting in such plea, which affidavit shall accompany such plea.' The language of the law is, that the party pleading must make the oath. It makes no exception in favor of executors, nor can we make it. The language of the law is clear, plain, and explicit, and where there is no ambiguity, there is no room for construction. The party pleading the plea, denying the execution of the writing, must support that plea by oath or affirmation. * * *"

In the case at bar, we look to our statute. Section 287 provides that, "in all actions, allegations of the execution of written instruments * * * shall be taken as true unless the denial of the same be verified by the affidavit of the party, his agent or attorney." It is seen that there is no exception made as to administrators and executors. The administrator is a real party to the action and verifies the pleadings as such party, and not as agent of the testate or intestate. Kaufman v. Boismier, 25 Okla. 252, 105 P. 326. The allegations of the execution of the written instruments shall be taken as true unless the denial of the execution shall be verified. This verified denial must be by the party making the denial, or by his agent or attorney. Twist v. Colonial Trust Co., supra. The statute applies in all actions in reference to the allegations of written instruments. These allegations in reference to the execution of written instruments under our statute are to be taken as true, unless the denial of the execution thereof be verified by the affidavit of the party—not necessarily the party who signed the instrument—his agent, or attorney, but the words, "the party," mean the party making the denial.

The pleading in the case at bar is an eva-

sive pleading. It was the intent of section 287, C. O. S. 1921, to require a specific allegation of the execution of the instrument and a verification denying the execution of the instrument pleaded to avoid an admission of the same. When plaintiff alleges in the petition the execution and indorsements on the note, the defendant is thereby prevented from denying the same by the mere interposing of a general denial unless said answer is verified. Fisher v. Spillman, 85 Kan. 552, 118 P. 65.

When a plaintiff alleges the execution of a written instrument, that is a specific allegation, and under section 287, supra, the defendant is called upon to meet this issue. Berry v. Oklahoma State Bank, 50 Okla. 484, 151 P. 210. If defendant does not desire to admit the allegations of the execution of the instrument, he is required to file a verified denial.

The defendant, in the instant case, after filing an answer by way of general denial, except as to such allegations as are therein specifically admitted, qualified, or explained, then states that she has no knowledge or information of the instrument in question, and therefore denies the execution of the same. This form of pleading should not be approved in denial of a specific allegation. If the defendant did not know or had no knowledge or information as to the execution of the instrument in question, it was her bounden duty as an administratrix of said estate to inquire and to make investigation of the facts and circumstances upon which she might base some knowledge and information concerning the execution of said instrument, in order to interpose a proper defense, and after such investigation, if said administratrix believed that said decedent did not execute the note in question, she could very properly deny the execution of same under section 290, C. O. S. 1921, which section provides that the affidavit shall be sufficient if it states that the affiant believes the facts stated in the pleading to be true. This would be sufficient denial of the execution of the note. In other words, if the allegation of the execution is untrue, the defendant should deny the same by positive verified denial, but if defendant only believes the execution to be untrue, then the verification on belief is sufficient. The defendant has not seen fit to so verify the answer in question. In substance, she says that she does not know and therefore denies the execution and verifies the answer by saying that she has read the above and foregoing answer to plaintiffs' petition and knows and understands the facts and allegations alleged and contained in said answer, and this affiant believes the facts and allegations stated in the foregoing answer to be true. This is not a denial of the facts and allegations in reference to the execution of the instrument set forth in plaintiffs' petition. It amounts to no more than saying that the defendant knows of no facts, and therefore verifies that she believes the facts and allegations stated in the above and foregoing answer to be true. In fact, she verifies that she denies no fact, and a general denial such as attempted to be pleaded in the case at bar, in conjunction with the verification, constitutes no denial of the fact of the execution of the note pleaded in the petition. Such answer does not meet the requirement of section 287, C. O. S. 1921.

Defendant also contends that there was no delivery of this note by reason of the matters and things alleged in paragraphs 4, 5, and 6 of her answer. These averments in her answer were nothing more nor less than an attempt to vary the terms of a written instrument, and such defense goes to the very heart of the instrument and seeks to vary its written terms and to void a contract which imports verity upon its face, and which is an express promise to pay upon demand a certain sum of money.

This case was apparently tried on the theory that the burden of proof rested upon plaintiffs to show the execution of the note. Aside from the pleadings admitting the note, the opening statement of counsel, and the evidence adduced, we are of the opinion that the note was properly introduced in evidence, and that this burden was not upon the plaintiffs, in view of the record presented in this case.

Aside from the insufficiency of the answer to deny the execution of the instrument in question, there is the following testimony from the deposition of Mrs. Bertha Dille, wherein she testified as follows:

"I found three or four notes signed by a Mr. Shell, the man who bought her residence in Athens, Tenn., one note signed by Chas. Caldwell for $1,500."

No objection was made to this testimony in reference to locating the property and effects of Mrs. Fox by the witness, and this note, in accordance with this record, is the note in question.

Under the record in this case, this note, in the absence of any fraud, undue influence, or mistake should be binding on the parties, even though the court improperly ruled that

the execution of the note in question was not admitted by the pleadings. In view of the foregoing, it is immaterial as to whether the registration tax thereon was paid. The court arrived at the proper determination of the questions involved herein and did not err in overruling the demurrer interposed by defendant and in sustaining the objection of plaintiffs to the introduction of evidence on behalf of defendant.

The judgment of the trial court is affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and KORNEGAY, JJ., concur.

RILEY, J., concurs in conclusion, but dissents to the holding that repugnant defenses may not be united in one answer. Citing Emerson-Brantingham Implement Co. v. Ware, 71 Okla. 19, 174 P. 1066; Covington v. Fisher, 22 Okla. 207, 97 P. 615.

ANDREWS, J., absent.